THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. OSCAR F. BECKWITH, Appellant.

Difficulty in procuring persons qualified to sit as jurors in a criminal action is no evidence that the persons actually chosen were either actuated by improper motives, or that the verdict rendered by them did not express the truth of the matter as disclosed by the evidence.

The provision of the Penal Code (§ 2), declaring that any act or omission begun before said Code took effect, should be "inquired of, prosecuted and punished" in the same manner as if this Code had not been passed," does not relate to or include the evidence which may be given, or the degree of proof required to convict upon a criminal trial.

Said provision, therefore, does not affect the provision of the Code of Criminal Procedure (§ 181) stating the degree of proof required to convict of murder

or manslaughter, and the provision last mentioned applies to the trial of an indictment for murder alleged to have been committed before the passage of the Penal Code, but tried thereafter.

Defendant was indicted for the murder of V. It appeared that on the morning of the day named in the indictment V. was seen in the neighborhood of defendant's cabin going toward it. A neighbor testified that in the evening of that day in going to the cabin ·he "smelt something burning," and entering found B. tending a large fire in his stove, from which came a "sizzling sound.". B. explained that he was "burning pork rinds." Within two days thereafter B. disappeared, and on searching his cabin pieces of human bones, parts of the skull and of a hand and the feet were found among the ashes of the stove, and in the cabin fragments of a man's body, cut to the length of stove wood were found; the head, left hand and both feet were missing. An axe, bloody, and having upon it hair of the color of V.'s and clothing proved to have been V.'s, with blood on it, were also found. The fragments of the body, when put together, outlined, so far as they went, a man of V.'s size and appearance. One of the lungs had been punctured with a knife or other sharp instrument, entering from behind near the shoulder.. Cuts were found in the coat, vest and shirt, corresponding with the wound in the body. Statements of the defendant were proved in substance that V. came into his house and "got killed." V., so far as the evidence disclosed, was never seen alive after the morning referred to. *Held,* that there was "direct proof" of "the death of the person alleged to have been killed," within the meaning of said provision of the Code of Criminal Procedure, sufficient to sustain a conviction; also, that the evidence sufficiently showed the crime was committed by defendant with a deliberate and premeditated design to effect death.

(Argued December 8, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 11, 1887, which affirmed a judgment of the Court of Oyer and Terminer in and for the county of Columbia, entered upon a verdict convicting the defendant of the crime of murder in the first degree. (Reported below, 45 Hun, 422.)

The material facts are stated in the opinion.

*L. F. Longley* for appellant. The court erred in denying defendant's motion made at the close of the People's evidence, that the court direct a verdict of acquittal on the ground that there had not been sufficient legal proof of the *corpus delicti.*

Statement of case.

(Code of Crim. Pro., § 410 ; Penal Code, § 181 ; *Ruloff* v. *People*, 18 N. Y. 179 ; *People*, 3 Park. Cr. 342 ; 3 Greenl., § 30 ; *Webster's Case*, 5 Cush. 295 ; 3 Starkie's Ev. 1234 ; 1 Bouv. Dic. 478 ; 2 Russ. on Cr. 824, *note ;* id. 826 ; *Hape's Case*, Cow. Cr. Dig. 97 ; 2 Park. Cr. 14 ; Code of Civ. Pro., § 389 ; Barb. Cr. Law, 424 ; Wills on Cir. Ev. 84, 89, 90.) There was no proof of any criminal act to rebut the presumption of innocence which the law throws around a man when defending his house and his person against a lawless assailant. (*Stokes* v. *People*, 63 N. Y. 164 ; 3 Greenl. on Ev. 16.) Justifiable homicide must be presumed until the contrary is proved. (1 Russ. on Crimes, 662, 663 ; Roscoe's Cr. Ev. 640, 710.) If the defendant was guilty of murder, the verdict should have been in the second, and not in the first degree. (Penal Code, § 183.) When, as in this case, there is evidence of an altercation and attack by deceased upon the defendant, previous expressions of ill will, even if amounting to threats, will not alone furnish evidence that the homicide was committed in pursuance of a deliberate purpose. There must be some overt act of defendant indicating his purpose preceding the killing, such as lying in wait, providing a weapon or seeking his victim. (*People* v. *Hovey*, 29 Hun, 382 ; *People* v. *Sindram*, 88 N. Y. 196 ; *People* v. *Majone*, 91 id. 211 ; *People* v. *Cornette*, 92 id. 85 ; *People* v. *Leighton*, 10 Abb. N. C. 261.) The prosecution was bound to show that between the commencement of the fight and the time when the fatal violence was used there was not only a lapse of time sufficient for legal deliberation and premeditation, but time for the defendant's passion to cool. (Ross Cr. Ev. 714, 964, 965 ; *People* v. *Sullivan*, 7 N. Y. 400 ; 1 Russ. on Crimes, 524, 525 ; 4 Black. 191 ; 1 Russ. on Crimes, 513 ; *People* v. *Leighton*, 88 N. Y. 117.)

*A. B. Gardenier* for respondent. The confession or admission of the defendant, admissible under section 395 of the Code of Criminal Procedure, is competent proof of the *corpus delicti*. (*People* v. *Jaehne*, 103 N. Y. 199, 200 ;

*People* v. *Badgley*, 16 Wend. 59; Best on Ev. 28; 3 Greenl. on Ev., § 133; *Comm.* v. *Webster*, 5 Cush. 295; *King* v. *State of Missouri*, 107 U. S. [17 Otto], 221; *People* v. *Ruloff*, 18 N. Y. 179.) A man is presumed to intend the natural consequences of his act. (*Foster* v. *People*, 50 N. Y. 609.) In criminal matters a person is presumed to intend whatever is the natural consequences of his own action. (Phil. Ev. 632; *People* v. *Conroy*, 2 N. Y. Cr. R. 582; *Thurber* v. *Harlem R. R. Co.*, 60 N. Y. 331; *Morrison* v. *Erie R. Co.*, 56 id. 308; *People* v. *Jefferson*, 2 N. Y. Cr. R. 246.) The jury may find in the very act of killing, in the manner in which it was done, the weapon used, the number of blows and wounds, the time and place where effected, the disposition of the victim, and the objects accomplished — everything requisite to satisfy them of the presence of deliberation and premeditation as components of the crime. (*People* v. *Walworth*, 4 N. Y. Cr. Rep. 355, 361; *People* v. *Beckwith*, 103 id. 368, 567; *People* v. *Conroy*, 2 id. 581.) It cannot be said, as matter of law, that there is no evidence of premeditation and deliberation. (*People* v. *Jones*, 3 N. Y. Cr. R. 263.)

Danforth, J. A reversal of the conviction and a new trial is asked for upon the grounds:

1. That there is no legal proof of the *corpus delicti*.

2. That the verdict is against the weight of evidence and against the law.

3. That the verdict was the result of prejudice and passion on the part of the jury.

4. That evidence offered by the defendant was improperly excluded.

5. That the officers charged to keep the jury while deliberating upon their verdict, were not properly sworn.

There is nothing in the record to sustain this last proposition. The oath actually administered is not given, nor is there anything before us to show that the regulation of law in regard to it (Code of Crim. Pro. § 421) was not observed.

The fourth point seems also without merit. The evidence offered and rejected is sufficiently stated by the General Term (45 Hun, 428) and was properly dealt with. It had no relation to any question at issue. Nor did it affect the credibility of the witness whose expressions in conversation were sought to be proven. Testimony as to matters which are neither relevant nor material is incompetent because it tends neither to establish nor disprove anything. The third point has no foundation. The only fact concerning it to which our attention is directed by the appellant is that one hundred and fifty-six jurors were called before a trial panel could be obtained. Difficulty in procuring persons qualified to sit is no evidence that the jurors actually chosen, and thus pronounced free from "all legal objections" and to be men "of approved integrity and sound judgment" (2 R. S. 411, § 13, subd. 5), were either actuated by improper motives or that the verdict rendered did not express the truth of the matter as disclosed to them in evidence.

The remaining propositions of the appellant are of a more serious character. The *first* (*supra*) is founded upon the general rule that the fact that an offense has been committed, must be fully established before any one can be held to answer for it. "I would never," says Lord Hale (2 Hale's P. C. 290) "convict any person of murder or manslaughter, unless the fact was proved to be done, or at least the body found dead." The proposition is elsewhere somewhat differently stated, as by Starkie (1 Stark. on Ev. 575) that upon charges of homicide the accused shall not be convicted unless the death be first distinctly proved either by direct evidence of the fact or by inspection of the body;" by Greenleaf (3 Greenl. on Ev. § 30), that even in cases of homicide, though ordinarily there ought to be the testimony of persons who have seen and identified the body, yet this is not indispensably necessary in cases where the proof of the death is so strong and intense as to produce the full assurance of moral certainty; in *Ruloff* v. *People* (18 N. Y. 179), that in order to warrant a conviction of murder there must be direct proof

either of the death, as by the finding and identification of the corpse, or of criminal violence adequate to produce death, and exerted in such a manner as to account for the disappearance of the body. It is also said that the *corpus delicti* in murder has two components: Death as the result, and the criminal agency of another as the means. It is only where there is direct proof of one that the other can be established by circumstantial evidence. And by the Code of Criminal Procedure the degree of proof in such cases is clearly stated by the provision (§ 181), that "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of killing by the defendant as alleged, are each established as independent facts, the former by *direct proof* and the latter beyond a reasonable doubt.

This statute regulates the practice of the courts as to matters of evidence, signifying what weight is to be given to the testimony admitted, and the appellant claims that its prohibition applies to the time of the trial, without regard to the time when the offense was committed, whether before or after the passage of the law. It does, unless restricted by the act itself. The court below were of opinion that it was so limited, and that the provisions of section 181, as they now read, do not apply. The homicide was committed January 10, 1882. The Penal Code took effect December 1, 1882 (§ 727), and it was provided (§ 2) that "no act or omission begun after the beginning of the day on which this Code takes effect as a law, shall be deemed criminal or punishable, except as prescribed or authorized by this Code, or by some statute of this state not repealed by it. Any act or omission begun prior to that day may be inquired of, prosecuted and punished in the same manner as if this Code had not been passed." Does the latter clause include the provision of section 181? An "act" criminal in its nature "may be inquired of" by various courts upon whom jurisdiction is conferred "to inquire," through the intervention of a grand jury, concerning it; or such inquiry may be made in certain cases through an examination before a magistrate, but in either case

the "inquiry" relates to a proceeding before indictment found or trial had; prosecution relates to the warrant, the arrest, the indictment and other proceedings following the "inquiry" and before punishment, and the manner of so doing is regulated by the Code of Criminal Procedure (Penal Code, § 8). Neither relates to, or within their common meaning includes the evidence which may be given or the degree of proof required upon the inquiry or during the prosecution to secure a conviction and punishment. The section (181) enacts a rule of evidence applicable, we think, upon the trial to all cases within its terms, and is not dependent upon the time of the commission of the offense. It, therefore, is properly invoked by the appellant.

But even under its provisions the plaintiff's accusation was well established. Evidence is the medium of proof; proof is the effect of evidence. Here the evidence of circumstances identifying the body of the dead man was of a conclusive nature and tendency. Vandercook, on the morning of the day named in the indictment (January tenth), was seen in the neighborhood of the defendant's cabin and was then going towards it. In the evening of that day a neighbor going to Beckwith's cabin, and before reaching it, "smelt something burning," and on entering found Beckwith tending a large fire in his stove already red hot, and from which came, he says, "a sizzling noise." Beckwith explained that he was "burning pork rinds," and was preparing "to bake." At some time between that evening and the twelfth of January he disappeared, and on that day neighbors, under the direction of an officer, burst open the door of his cabin and searched the interior. Pieces of human bones, part of the skull and fingers, and of the hands and feet were found among the ashes in the stove, and in another part of the cabin the remaining fragments of a man's body cut to the length of stove wood. An axe was found, bloody and bearing upon it hair of the color of Vandercook's. There was found clothing (with blood on it), also proven to be his — "a coat and vest,

an arctic, a boot and pair of pants." The fragments of the body, when put together, outlined, so far as they went, a man of Vandercook's size and appearance. The head was missing; the left hand and both feet gone; one of the lungs had been punctured with a knife or other sharp instrument; entering near the shoulder, it penetrated through into the lungs with a downward and forward thrust from behind." Witness says, " I traced the wound through the coat and vest, and shirt directly; it corresponded with the same wound that I traced through the body into the lung."

There was also in evidence the statements of the defendant made voluntarily to persons who visited him in jail, to one that Vandercook came into his house and " got hurt," and to another that he came in and " got killed."

After Vandercook was seen on the morning of the tenth of January going towards the cabin of Beckwith, he did not return to his home, nor so far as the evidence discloses was he afterwards seen alive save by Beckwith. The confession of Beckwith was admissible in evidence (Code of Crim. Pro. § 395; *People* v. *Jaehne*, 103 N. Y. 199), and with the testimony already in there was " direct proof " within the meaning of the statute of the death of the person alleged to have been killed.

We are also of opinion that the evidence fully warranted the finding of the jury that Vandercook was killed by the defendant, and that the killing was premeditated and deliberate. It was preceded by threats disclosing that intention, and which were repeated up to within a short time before the homicide. They do not, it is true, establish the guilt of the defendant, but they show that the act committed by him, and otherwise proven, was thought of beforehand, and so premeditated. There was the intent to kill, and there was malice. The evidence shows also that the action of the defendant concurred with his intent. The wound through the back was not, so the surgeon says, the fatal blow, although directed against a mortal part, and the condition of the axe, infected with the blood and hair, shows that another instru-

ment was resorted to for the purpose, as may be inferred, of completing the work, in the doing of which the knife had failed. The character and course of that wound disclosed an attack from behind, made, it may be, from some place of concealment, as at the door, and suddenly, on the entrance of Vandercook; at any rate, there was the concurrence of a. conscious purpose, as indicated by threats, the opportunity for their fulfillment, the choice of situation and the use of different weapons until the intent was accomplished. Then followed immediate but well considered mutilation of the body into convenient parts for burning and its attempted destruction, but especially and first such parts of it as contained peculiar marks, as the head, the hand, the foot. On the same day, falsehood by Beckwith as to the thing burning in the stove and the going away of Vandercook, his own flight, taking with him all articles of value or of use from the pockets of the dead man. These are among the circumstances which might well lead the jury to the conclusion that there was on the part of the defendant malice and an intention to kill, and that the killing by him of Vandercook was in pursuance of premeditation and deliberation, rather than the effect of sudden anger and without design. They were left to the jury after a charge to which no exception was taken, and by which they were directed to solve every doubt in favor of the defendant. They have also been dwelt upon by the General Term, and after discussion by the learned and experienced judges of that court, a conclusion was reached that the trial judge did not err in leaving the question to the jury as one presented upon evidence sufficient in some proper view to justify a conviction. We agree in that conclusion, and think it unnecessary to add more to, or repeat, the reasons expressed by the majority of that court (45 Hun, 422) affirming the conviction. The case is now a second time before us. The record on the first occasion (103 N. Y. 361) contained testimony given by the defendant. Its omission makes no room for a change in the conclusion then reached, for the essential circumstances in evidence, as they bear upon the pro-

position presented by the issue, remain the same. They have also been examined by us with an inclination *in favorem vitœ*, in view of the authority conferred (Laws of 1887, chap. 493, amending § 527 of the Code of Crim Pro.) since the former decision was rendered, but we are not satisfied that the verdict was against the weight of evidence or against law, or that justice requires a new trial.

We are therefore constrained to say the appeal fails, that a new trial should be denied and the conviction and judgment affirmed.

All concur.

Judgment affirmed.