[No. 41555. En Banc. August 19, 1971.]

THE STATE OF WASHINGTON, *Petitioner*, v. DOROTHY MAE RANDECKER, *Respondent*.

*Charles O. Carroll, Prosecuting Attorney, Michael Di Julio* and *Douglas S. Dunham, Deputies,* for petitioner.

*James S. Munn* and *Joel A. C. Rindal,* for respondent.

STAFFORD, J.—A jury found Dorothy Mae Randecker guilty of 50 counts of second-degree forgery and 1 count of grand larceny by embezzlement. The trial lasted 10 days, 111 witnesses testified, and 182 exhibits were identified. The proceedings filled a 5-volume statement of facts.

The crimes charged are defined as follows. RCW 9.44.040 Second-degree forgery:

> Every person who, with *intent to injure or defraud* shall—
>
> . . .
>
> (2) Fail to make a true entry of any material matter in any public . . . record or account . . .
> . . . shall be guilty of forgery in the second degree
> . . .

(Italics ours.) RCW 9.54.010 Larceny:

> Every person who, with *intent* to deprive or defraud the owner thereof—
>
> . . .
>
> (3) Having any property in his possession, custody or control, as . . . employee . . . or as a public officer . . . shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner . . .
>
> . . .
>
> Steals such property and shall be guilty of larceny.

(Italics ours.) The defendant made a timely motion in arrest of judgment and in the alternative moved for a new trial. The motion in arrest of judgment was granted on the ground that

> there was *no proof* of essential elements of the crime[s] charged

(Italics ours.) because in the alleged crimes of forgery in the second degree

> there remains *no evidence* from which it may be concluded that she failed to make the entries with the required specific *intent to injure and defraud*

(Italics ours.) and in the alleged crime of grand larceny by embezzlement

> [T]here is *no evidence* that the defendant did *secrete, withhold or appropriate the money* to her use or to the use of any other person, *or any evidence* from which this can be reasonably inferred.

(Italics ours.) The trial court denied the motion for new trial.

The state appealed from the order granting the motion in arrest of judgment. The defendant did not cross-appeal from the denial of her alternative motion for new trial.

■ A motion in arrest of judgment challenges the sufficiency of the evidence to take the case to the jury. *State v. Reynolds,* 51 Wn.2d 830, 322 P.2d 356 (1958); *State v. McDaniels,* 30 Wn.2d 76, 190 P.2d 705 (1948). Whereas a recitation of the concept is simple enough, the specific application thereof has caused some difficulty.

Referring to the trial court's power to review a jury's verdict, we held in *State v. Long,* 44 Wn.2d 255, 259, 266 P.2d 797 (1954)[1]:

> The court's only function is to determine whether the evidence was *legally sufficient* to support such a finding —that is, whether there is *substantial evidence* tending to establish circumstances on which such a finding could be predicated.

(Italics ours.) In short, if there is *substantial evidence* the issue must be resolved by the jury and not by the court.[2] Upon cursory observation, the foregoing statement might appear to conflict with CrR 101.04W (c) (3),[3] the effect of

---

[1]Almost without exception, the cases adhering to this view involve circumstantial evidence. For example, see: *State v. Franks,* 74 Wn.2d 413, 445 P.2d 200 (1968); *State v. White,* 74 Wn.2d 386, 444 P.2d 661 (1968); *State v. Basford,* 76 Wn.2d 522, 457 P.2d 1010 (1969); *State v. Myers,* 65 Wn.2d 911, 400 P.2d 372 (1965); *State v. Lewis,* 55 Wn.2d 665, 349 P.2d 438 (1960).

[2]In *State v. Dugger,* 75 Wn.2d 689, 453 P.2d 655 (1969), this court specifically extended the "substantial evidence" rule, in cases of circumstantial evidence, to causes subject to appellate review.

[3]CrR 101.04W (c) "Judgment may be arrested on the motion of the

which is to provide that it is the jury's duty to make the decision, if there is *some proof* of the elements of the crime for which a defendant has been tried. The conflict is more apparent than real, however.

■ · Although the words "proof" and "evidence" are frequently used interchangeably, there is a distinct difference. *State v. Crutcher,* 231 Iowa 418, 1 N.W.2d 195 (1941); *People v. Beckwith,* 108 N.Y. 67, 15 N.E. 53 (1888); 1 B. Jones, The Law of Evidence, § 3, p. 5 (5th ed. 1958). "Evidence" (both direct and circumstantial) is a narrower term than "proof." It is only a medium by which "proof" may be established. *State v. Crutcher, supra; People v. Beckwith, supra;* 1 B. Jones, The Law of Evidence, *supra.* "Proof" of a fact in issue may be established by any one or by a combination of several legal media including "evidence," presumptions,[4] and matters judicially noticed.[5] "Proof" is the effect of employing any or all such media within the legal rules for the purpose of producing conviction in the mind of a judge or jury, excluding, however, mere argument. Black's Law Dictionary (4th ed. rev. 1968).

· Thus, the "substantial evidence" rule merely spells out the quantum of "evidence" necessary to produce the "proof" required by CrR 101.04W(c)(3). It does not provide a different test. *State v. Dugger,* 75 Wn.2d 689, 690, 453 P.2d 655 (1969);

> · the scope of . . . review of the sufficiency of circumstantial evidence is limited to a determination of whether the state has produced *substantial evidence* tending to

---

defendant for the following causes: . . . (3) That there has been *no proof* of some element of the crime for which the defendant has been tried . . ." (Italics ours.)

· [4]This court has held that a presumption is not properly classified as "evidence". *Smith v. Seattle,* 178 Wash. 477, 35 P.2d 27 (1934); Wiehl, *Instructing a Jury in Washington,* 36 Wash. L. Rev. 378, 393 (1961).

[5]Some authorities have broadened the definition of "evidence" to include matters judicially noticed. 1 B. Jones, The Law of Evidence, § 3, p. 5 (5th ed. 1958); 1 S. Greenleaf, A Treatise on the Law of Evidence, § 1 (15th ed. 1892); Model Code of Evidence, Rule 1 (3) (1942).

establish circumstances from which the jury could reasonably *infer the fact to be proved.*

(Final italics ours.)

A trial court may not *weigh the evidence* to determine whether the necessary quantum has been produced to establish *some proof* of an element of the crime. It may only test or examine the *sufficiency* thereof. *State v. Dugger, supra.* The jury is the sole and exclusive judge of the weight of evidence, and of the credibility of witnesses. *State v. Basford,* 76 Wn.2d 522, 457 P.2d 1010 (1969); *State v. Zorich,* 72 Wn.2d 31, 431 P.2d 584 (1967). In other words, the trial court must concern itself only with the presence or absence of the required quantum. *State v. Basford, supra; State v. Lewis,* 55 Wn.2d 665, 349 P.2d 438 (1960); *State v. Donckers,* 200 Wash. 45, 93 P.2d 355 (1939).

In determining whether the necessary quantum exists, the trial court must assume the truth of the state's evidence and view it most strongly against the defendant and in a light most favorable to the state. It must draw all inferences that reasonably can be drawn therefrom in favor of the state's position. *State v. Denney,* 69 Wn.2d 436, 418 P.2d 468 (1966); *State v. Holbrook,* 66 Wn.2d 278, 279, 401 P.2d 971 (1965); *State v. Lutes,* 38 Wn.2d 475, 230 P.2d 786 (1951).

In the same vein, the court is only empowered to determine whether there is "substantial evidence" tending to establish circumstances on which a necessary element of a crime may be predicated. However, whether the circumstances tending to connect the defendant with the crime, or tending to establish intent exclude, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt, is, again, a question for the jury. *State v. White,* 74 Wn.2d 386, 444 P.2d 661 (1968); *State v. Lewis, supra; State v. Cranmer,* 30 Wn.2d 576, 192 P.2d 331 (1948); *State v. Donckers, supra.* The fact that a trial or appellate court may conclude the evidence is not convincing, or may find the evidence hard to reconcile in some of its aspects, or may think some evidence appears to refute or negative

guilt, or to cast doubt thereon, does not justify the court's setting aside the jury's verdict. *State v. Lewis, supra; State v. Donckers, supra; State v. Myers,* 65 Wn.2d 911, 400 P.2d 372 (1965).

Furthermore, it is unnecessary for the court to be satisfied of the defendant's guilt beyond a reasonable doubt. It is only necessary for it to be satisfied that there is "substantial evidence" to support either the state's case, or the particular element in question. When that quantum of evidence has been presented, there is *some proof* of the element or crime in question and the motion in arrest of judgment must be denied. *State v. Cranmer, supra;* Trautman, *Motions Testing the Sufficiency of Evidence,* 42 Wash. L. Rev. 787, 806 note 75 (1967).

With these criteria in mind, a review of the extensive record convinces us that whether we agree or disagree with the jury's resolution of the issues, there is "substantial evidence" from which the jury could reasonably have concluded there was *some proof:* (1) that the defendant did secrete, withhold or appropriate the money in question to her own use or to the use of another; and, (2) that the defendant failed to make true entries of material matters in the public records with an intent to injure or defraud.

Considering only that evidence most favorable to the state and drawing every reasonable inference therefrom the jury could have found the facts hereinafter related. The defendant was hired by the Roxbury District Court as the traffic violation clerk because of her expertise in dealing with traffic citations and the attendant bookkeeping. Her duties included everything having to do with the processing of traffic tickets including the receipt of cash and checks for payment of bail and fines, the preparation of receipts for the same, the handling of the registry and transcript, the making of entries in the bail forfeiture index and/or criminal docket, the recording of true notations of case dispositions on and the preservation of the court's copy of traffic tickets, the entry of true notations of case dispositions on the copy of the traffic ticket destined for the state patrol

headquarters, the preparation of listing tapes and deposit slips showing a true record of funds received for deposit, the making of bank deposits based thereon, and the keeping and balancing of the court's books. While so employed, the defendant handled at least 85 per cent of all funds received by the court between January 4, 1964 and January 4, 1965.

Between January 2, 1964 and August 19, 1965 the court sustained a cash shortage of approximately $12,643. The defendant is neither charged with having embezzled that amount nor is it necessary for the state to establish that she did. It is necessary for the state to establish only that she secreted, withheld or appropriated to her own use an amount of money in excess of $75. RCW 9.54.090(6).

The theft was accomplished by a fraudulent bookkeeping scheme known as "lapping" which is an operation recognized in accounting circles as a sophisticated type of embezzlement.

"Lapping" consists of accepting checks and failing to account for the receipt thereof in the books (i.e., in the court's registry and transcript or in any other records that would indicate an intake of funds by check). To make the books balance, it is necessary for one to remove cash in an amount equal to the face value of the checks received. Thereafter, the perpetrator of the scheme records the checks on the listing tapes and deposits them in the bank to replace the money taken. Since no record has been made of the checks having been received, there is no apparent loss when the checks are used to replace the same amount of cash in the bank deposit.

One of the essential elements of a successful "lapping" system is the destruction, secreting or failure to prepare records to account for the intake of funds by check. There is "substantial evidence" from which the jury could have concluded that the manner in which defendant handled 50 specific traffic tickets (i.e., those that are the basis for the 50 counts of forgery) formed an integral part of the "lapping" system.

Each of the 50 traffic tickets consisted of 5 copies:  (1)

*Green Copy*—given to the violator by the arresting officer; (2) *White Copy*—kept by the court as a permanent record to support the charge and to account for case disposition by trial or bail forfeiture; (3) *Yellow Copy*—forwarded to the Department of Motor Vehicles following disposition; (4) *Pink Copy*—presented to the court by the arresting officer and returned to him after the case with the disposition recorded thereon by the traffic violations clerk; (5) *Cardboard Copy*—transmitted, with the completed pink copy, to the state patrol by the arresting officer.

It is clear the court received 49 checks for payment of bail forfeiture on the 50 traffic citations (1 check was given in payment of 2 tickets). All 49 checks, as well as the white and pink copies of the traffic tickets, were handled by the defendant in her capacity as traffic violations clerk. The defendant issued no receipts for the 49 checks, made no record thereof in the registry and transcript and failed to make the required record thereof in either the bail forfeiture index or criminal docket.

During the same period of time only the defendant handled the court's listing tapes and bank deposits. She alone listed and deposited all 49 checks while the court's books were maintained in a theoretical balance. Each of the 49 checks, covering forfeited bail on the 50 traffic citations, was in fact "lapped". It should be noted, however, no "lapping" occurred during the defendant's 2-week vacation.

Since the "lapping" scheme also involved numbered and accountable tickets, it was necessary to enter a fictitious disposition on each pink copy associated with a "lapped check". It was also necessary for the fictitious disposition to be consistent with a proper handling of receipts by check. This would keep the copies of the numbered tickets in a fictitious balance, and would make it appear that there had been no "lapping" to support an embezzlement. In the case at hand the pink copy of each of the 50 tickets reached the state patrol as required. A fictitious disposition, ordinarily consistent with proper handling, had been entered on each by the defendant.

As previously indicated, the white copy of each ticket was regularly destined for the court's permanent records. It was designed to support the charge (*i.e.*, a simplified complaint) and to account for disposition of the case by trial or by bail forfeiture. As part of the "lapping" operation, it was necessary to destroy each white copy that corresponded with a "lapped" check. This was essential to attain a false balance with the other court records that failed to disclose receipt of specific "lapped" checks. In the instant case, the white copies of all 50 traffic tickets (which corresponded with the 49 "lapped" checks) were missing. Under all of the circumstances just related, it would have been reasonable for the jury to infer that the defendant had disposed of the 50 missing white copies.

The 49 "lapped" checks had a total value of $886. To maintain the court's books in the spurious balance, it would have been necessary for one to remove cash in an amount equal to such total face value (an amount which also corresponded with the total value of the false dispositions entered by defendant on the pink copies of the 50 traffic tickets). Had this not been done, the court's books would have indicated an overage of $886. Thus, it is clear at least $886 in cash was secreted, appropriated or withheld from the court, its *true* owner.

The state's accountant indicated that during the same period of time he found $610, in unaccounted for currency, had been deposited in the defendant's bank account. Granted, defendant gave the jury an explanation of the deposit. However, the negative effect of the explanation cannot be considered in a motion in arrest of judgment. We must consider the state's evidence as true, interpret it most strongly against the defendant, and draw every reasonable inference therefrom. *State v. Holbrook*, 66 Wn.2d 278, 401 P.2d 971 (1965).

Considering the totality of all facts and circumstances favorable to the state, there is "substantial evidence" from which the jury could reasonably have concluded the defendant secreted, withheld or appropriated the court's

funds to her own use or to the use of another. In other words, there was *some proof* thereof.

On the 50 charges of second-degree forgery, the only issue is whether there was *some proof* of the defendant's *intent to injure and defraud* by her failure to make true entries of material matters in a public record or account. There is "substantial evidence" to support the jury's conclusion that such proof existed. The manner in which the defendant entered fictitious dispositions on each of the 50 pink copies of the traffic citations, their connection with each of the 49 allied "lapped" checks, together with her failure to record the receipt of such checks in payment of bail, strongly supports a finding of "intent to injure and defraud."

■ It is suggested that evidence of an opportunity to commit an act, *standing alone,* provides no proof an accused actually committed the act. That is true. It is equally true, however, that evidence of opportunity to commit an act is a *link,* which coupled with other circumstances, may prove circumstantially that an accused did commit the act. *People v. Cooper,* 81 Cal. App. 2d 110, 183 P.2d 67 (1947); 23 C.J.S. *Criminal Law* § 907, p. 556 (1961); 29 Am. Jur. 2d *Evidence* § 251 (1967).

It is also asserted that even though the defendant had control over all of the means necessary to accomplish a successful "lapping" operation, and despite the fact she had the expertise to have perpetrated the scheme, she did not have *exclusive* control. We are reminded that others occasionally handled cash or checks taken in payment of bail forfeitures. Furthermore, other members of the court, including the district judge, engaged in an inexcusable practice of taking money from the cash drawer and substituting therefor an I.O.U. They also cashed personal checks to be "held" until they could be "covered" by a deposit. We take note of these facts and condemn the use of such an indefensible course of conduct. Nevertheless, it must be noted that all I.O.U.'s and personal checks thus cashed were accounted for.

It is urged that the lack of internal office controls created a factual situation neither entirely consistent with a hypothesis of the defendant's guilt, nor inconsistent with a reasonable hypothesis tending to establish her innocence. However, there being "substantial evidence" on the subject, the determination is strictly within the province of the jury. *State v. Lewis*, 55 Wn.2d 665, 349 P.2d 438 (1960); *State v. Cranmer*, 30 Wn.2d 576, 192 P.2d 331 (1948); *State v. White*, 74 Wn.2d 386, 444 P.2d 661 (1968); *State v. Donckers*, 200 Wash. 45, 93 P.2d 355 (1939).

There being *some proof* of the elements of the crimes charged, the motion in arrest of judgment should not have been granted. The order granting the motion is reversed and the cause remanded for reinstatement of the jury's verdict.

■ When an order granting a motion in arrest of judgment is reversed on appeal, an appellate tribunal is required to review and determine the validity of the trial court's action on defendant's alternative motion for new trial. CrR 101.08W(b). It is unnecessary for a defendant to cross-appeal. CrR 101.08W(b). The rule was adopted to eliminate a multiplicity of appeals, however. *State v. Jacobsen*, 78 Wn.2d 491, 477 P.2d 1 (1970). Thus, even though a defendant is not required to make a formal cross-appeal, he, at least, is required to inform the appellate tribunal of the errors he claims were committed in the denial of his motion for new trial. Lacking such minimal guidance, an appellate court would be required to search the record in an effort to speculate about what the defendant *might* have assigned as error, had he decided to do so.

There is nothing in the brief or in the transcript which discloses the trial court's reason for denying the defendant's motion for new trial. The defendant's brief has not supplied this information and no error has been assigned court's denial of her motion. For these reasons, we affirm the trial court's order denying defendant's motion for new trial.

The trial court is affirmed in part and reversed in part

and the cause remanded for action consistent with this opinion.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and SHARP, JJ., concur.

Petition for rehearing denied October 4, 1971.