[No. 5613–1.   Division One.   January 9, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. C. EARL TORGESON, *Respondent.*

18

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* for appellant.

*Kempton, Savage & Gossard, James Kempton, Bell, Ingram & Rice,* and *William Ingram,* for respondent.

JAMES, J.—Count 1 of a grand jury indictment charged that, in violation of RCW 9.22.040,[1] defendant C. Earl Torgeson conspired to defraud a governmental entity—a felony. In count 2 of the same indictment, he was charged with willful neglect of duty—a misdemeanor, RCW 42.20-.100. In summary, count 1 alleges that Torgeson, a county commissioner, conspired with the supervisor of a county road district and his assistant to use county labor and materials for his, Torgeson's, benefit. The indictment charges that repairs and improvements were furnished for both Torgeson's summer cabin and his automobile.

Count 2 alleges that Torgeson, "having received report or knowledge . . ." that the same road supervisor and his assistant had stolen county property, "did fail and neglect to determine the truth of such report or knowledge and did

---

[1]RCW 9.22.040 was repealed by the comprehensive revision of the State's criminal code effective July 1, 1976, and was not reenacted.

fail and neglect to act to protect such assets or recover the value thereof, . . ."

Prior to the trial of this case, both the road supervisor and his assistant had been convicted of grand larceny for their participation in the theft of county–owned timber and a generator.

At the close of the State's case, Torgeson's challenge to the conspiracy count was denied but the neglect of duty charge was dismissed "for insufficiency of evidence as a matter of law." Trial on count 1 resulted in a jury acquittal.

The State's appeal from the dismissal of count 2 presents the troublesome and recurrent question of whether a trial judge properly determined that no evidence or inference would support a charge or whether he usurped the jury's function by weighing the evidence and concluding that the charge had not been proven beyond a reasonable doubt. As observed in *State v. Randecker,* 79 Wn.2d 512, 515, 487 P.2d 1295 (1971), the resolution of the question continues to cause difficulty.

The State contends that its evidence established that on three occasions, Torgeson was placed on notice that employees of the road district "had arranged to and in fact had carried out the sale to private parties of timber cleared from county–owned property (by county employees on county time), all to their own financial benefit."

The first occasion occurred after a road district employee reported the thefts to a radio station news reporter. The report was relayed to the station's news director, who passed the report on to the county sheriff. The sheriff, in turn, informed Torgeson of the report.

Shortly thereafter, Torgeson phoned to tell the news director that he had investigated the report of stolen timber and was satisfied·that "the money was in the county treasury." Torgeson then asked who had made the accusation. The news director told him that she got the information from her news reporter, whereupon Torgeson said, "It's purely political." The news reporter had run against Torgeson at his last election.

The second occasion which the State contends "provided [Torgeson] with the next notice of possible wrongdoing in his district" concerned the informer–employee's being "hauled on the carpet" and accused of reporting log thefts to the sheriff by the thieving supervisor and his assistant. When the employee denied that he had made the report to the sheriff and asked who had accused him of this, the miscreants phoned Torgeson, who talked on the phone to the employee. The employee testified that Torgeson sounded quite angry and said that reporting the alleged thefts to the sheriff was "an awful thing to do."

The employee testified that he told Torgeson he had not reported the thefts to the sheriff and he offered to take a lie detector test if the supervisor and his assistant would also take a lie detector test concerning their involvement in the alleged timber thefts. Torgeson did not respond to the offer.

The third occasion occurred some months later. A state senator testified that an anonymous telephone caller informed him that county–owned logs and a compressor had been "sold." The caller asked that he inform Torgeson. The senator did so. Torgeson thanked him and said he would "check it right away," but made no mention of having received previous reports of timber theft nor any reference to prior contacts with the county sheriff.

The State's evidence also revealed that as a cover–up for the timber thefts, the supervisor and his assistant had accounted to the county treasurer for some of the sales. These records were furnished Torgeson when he made his inquiry following the first report from the radio station.

The State's evidence established that Torgeson directed the road supervisor prepare an inventory for compliance with the commissioner's statutory duty to file an inventory of county property every March. RCW 36.32.210. The inventory eventually uncovered the rumored thefts and foiled a cover–up scheme. The State's evidence also established that when the supervisor eventually came to Torgeson and confessed that he had stolen a generator

belonging to the county, Torgeson personally took him to the prosecuting attorney's office.

In granting the motion to dismiss, the trial judge reviewed the State's evidence concerning the three instances upon which the State relied before stating his conclusion that the count should be dismissed. Although he did not expressly analyze the evidence or lack thereof, the following colloquy which occurred during the State's final argument is revealing:

> THE COURT: Let me just ask you one or two questions. If I understand the State's position correctly, if the county commissioner has information concerning the theft or loss of county property—well, let's say a theft, or a criminal loss of county property, that he has not discharged his obligation if he knows that the same information is available to the county sheriff?
>
> MR. METCALF: Well, I'm not sure that is the State's position, Your Honor. The State's position however in this case was that he—took over the sheriff's potential responsibility, or at least caused the sheriff not to go ahead by saying, "I'll take care of it myself." And that testimony is in the record.
>
> THE COURT: Would the sheriff be subject to criminal charges then for allowing that, under the same theory?
>
> MR. METCALF: Well, I suppose it is possible.

The statute under which Torgeson was charged is as follows:

> Whenever any duty is enjoined by law upon any public officer or other person holding any public trust or employment, their wilful neglect to perform such duty, *except where otherwise specially provided for,* shall be a misdemeanor.

(Italics ours.) RCW 42.20.100. The State contends that both because of Torgeson's common–law fiduciary responsibilities and by the express terms of RCW 36.32.120(6),[2]

---

[2] "The legislative authorities of the several counties shall:

" . . .

"(6) Have the care of the county property and the management of the county funds and business and in the name of the county prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law; . . ." RCW 36.32.120(6).

there was evidence from which the jury could find that he willfully neglected to act to protect county assets or recover the value thereof. The State argues that upon hearing the rumor of the theft of the county timber, Torgeson's statutory duty in "the care of the county property" (RCW 36.32.120(6)) was to pursue an investigation and, if the rumors proved to be factual, take action to recoup the county's losses.

■ We agree with the trial judge and conclude that the State's evidence fell short of permitting a finding that Torgeson willfully neglected to perform a duty "enjoined by law." RCW 42.20.100. The rumor reported to Torgeson was of the theft of county property—a crime. The duty to investigate and prosecute crime is enjoined by law upon the county sheriff. RCW 36.28.010(1). Torgeson's duty concerning the timber would have been to notify the sheriff had not the sheriff already heard the rumor. Torgeson's further duty was to require an inventory of county property. This he did and, when the theft of the generator was revealed, he notified the sheriff.

The trial judge did not err in sustaining the challenge to count 2.

Affirmed.

FARRIS, C.J., and CALLOW, J., concur.