# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50810-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MATTHEW RICHARD MORASCH, | |
| Appellant. | |

MAXA, C.J. – Matthew Morasch appeals his convictions of one count of voyeurism (count 1) and two counts of attempted voyeurism (counts 2 and 3). Counts 1 and 3 were based on an "upskirt" video of a woman and a photograph of a girl's legs discovered during a search of Morasch's cell phone. Count 2 related to an incident in which Morasch, a teacher, took a video under a table of a female student.

We hold that the warrant authorizing the search of Morasch's cell phone was overbroad in violation of the Fourth Amendment's particularity requirement, and therefore we reverse Morasch's convictions on counts 1 and 3. We also reject a sufficiency of the evidence challenge to count 1 that Morasch makes in a statement of additional grounds (SAG). Finally, we reject other assertions that Morasch makes in his SAG that could relate to count 2, and therefore we affirm Morasch's conviction on count 2. We remand for further proceedings.

FACTS

*Attempted Voyeurism Incident*

Morasch was a teacher at Evergreen High School in Vancouver. On June 15, 2015, students in Morasch's class were working in small groups to complete a project. Morasch sat down at a table to speak with a particular group. Three students at a separate table observed Morasch holding his phone underneath the table and noticed that the phone screen indicated that he was recording a video. Morasch apparently was taking a video of 14-year-old KG, who was sitting opposite Morasch at the table and was wearing a dress.

One of the students at the separate table took a photo of Morasch sitting with KG and the rest of her small group. The photo shows Morasch seated opposite KG, leaning to his left, and holding his phone vertically below the surface of the desk in his left hand. The student who took the photo said she saw Morasch hold his phone under the table this way for about a minute and that she could see KG's legs on the screen.

After Morasch left the table where KG was seated, the students who had observed the incident showed KG the photo taken of Morasch holding the phone below the table. KG had not given Morasch permission to photograph her. KG was shocked, left the classroom, and reported the incident to school administration.

Vancouver police officer Nicholas Landas, Evergreen's assigned school resource officer, interviewed KG and her mother at the school. Landas determined that he would need to speak with Morasch and went to Morasch's classroom along with Evergreen's dean of students. Morasch walked back to Landas's office to speak with him privately.

Landas informed Morasch of his *Miranda* rights and that he was a suspect in a voyeurism allegation based on the statements of KG and KG's mother and the student's photograph taken of his interaction with KG. Landas asked Morasch for his phone in order to secure it as evidence subject to a forensic search once a search warrant had been obtained. Morasch turned over his phone to Landas, who powered the phone down and did not search it at that time.

*Search Warrant for Cell Phone*

Vancouver police obtained a search warrant for Morasch's phone. The warrant stated that there was probable cause to "search and seize all evidence, contraband, fruits, and instrumentalities of alleged violation of Voyeurism (RCW 9A.44.115)." Clerk's Papers (CP) at 203 (emphasis omitted). The warrant authorized the search and seizure of all evidence of "alleged violation of Voyeurism (RCW 9A.44.115)" regarding the following property:

> The analysis of the cellular phone belonging to Matthew R. Morasch (dob 03/23/1975). This is further described as a gray in color Apple iPhone 5S cell phone, model number A1533, serial number 3569650608794. This is to include all stored or removable memory cards stored within the device for photographs, videos, and metadata.

CP at 203-04 (emphasis omitted).

Officer Eric Thomas, a digital forensics investigator with the Vancouver Police Department, searched the data on Morasch's phone. He discovered an "upskirt" video of an unknown woman, apparently taken in a Goodwill store, and a picture of a girl sitting on top of a desk with her legs crossed in Morasch's classroom. The girl in the classroom photograph was wearing a dress. Both the Goodwill video and the classroom photograph had been taken on April 27, 2015. The search did not reveal any video or photograph from June 15, 2015.

*Motions and Trial*

The State charged Morasch with one count of voyeurism related to the upskirt video taken in the Goodwill store on April 27, 2015 (count 1), one count of attempted voyeurism related to the classroom incident on June 15, 2015 (count 2), and one count of attempted voyeurism related to the April 27, 2015 photo of the girl's legs in the classroom (count 3).

Morasch's defense counsel moved to suppress the evidence obtained from Morasch's phone pursuant to the search warrant, arguing that Landas lacked probable cause to seize the phone. This motion was denied. However, defense counsel never moved to suppress the evidence from Morasch's phone on the basis that the search warrant failed the Fourth Amendment's particularity requirement.

Morasch also filed a CrR 3.5 motion to suppress the statements he made to Landas. After a hearing, the trial court denied this motion.

Finally, Morasch filed a CrR 8.3(c) motion to dismiss the count related to the incident in his classroom, arguing that he did not film any of KG's intimate areas because they were all covered and because Thomas found no videos on Morasch's phone from June 15, 2015. The trial court denied this motion. Morasch then filed another CrR 8.3(c) motion to dismiss, arguing that the State's late disclosure to the defense of the photo taken by the student in Morasch's class in its native format prejudiced him. The trial court denied this motion as well.

Following a trial, the jury convicted Morasch of all three counts as charged. Morasch appeals his convictions.

ANALYSIS

A.    OVERBREADTH OF WARRANT FOR CELL PHONE SEARCH

Morasch argues that we should reverse his convictions on counts 1 and 3 because the evidence used to convict him was obtained pursuant to an overbroad search warrant that fails the Fourth Amendment's particularity requirement.  The State concedes that the warrant was overbroad and that counts 1 and 3 must be reversed, but claims that we should base our decision on ineffective assistance of counsel rather than on the merits because Morasch did not raise the issue in the trial court.  We address the merits and hold that the warrant was overbroad.

1.    Failure to Raise Issue in Trial Court

Morasch only argued in the trial court that probable cause did not support the warrant, and did not argue that the warrant failed the particularity requirement.  Under RAP 2.5(a), we generally will not review claims raised for the first time on appeal unless the party claiming the error can show the presence of an exception to that rule.  *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011).  One exception is under RAP 2.5(a)(3), which allows review of a "manifest error affecting a constitutional right."

To determine the applicability of RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude, and (2) the error is manifest.  *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).  An error is manifest if the appellant shows actual prejudice.  *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).  The appellant must make a plausible showing that the asserted error had practical and identifiable consequences at trial.  *Id.*  The focus is on whether the error "is so obvious on the record that the error warrants appellate review."  *Id.* at 100.

Here, Morasch claims that the search warrant for his phone, an item protected by the First Amendment, was overbroad in violation of the Fourth Amendment. This claim clearly implicates constitutional interests. As discussed below, the search warrant for Morasch's cell phone failed to meet the heightened particularity requirement for items protected by the First Amendment. The State concedes that Morasch was prejudiced because the trial court would have granted a motion to suppress if the overbreadth issue had been raised in the trial court. Therefore, we hold that Morasch's claim that the search warrant was overbroad involves a manifest constitutional error and consider the merits of the claim.

2. Legal Principles

The Fourth Amendment to the United States Constitution provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This amendment was designed to prohibit "general searches" and to prevent " 'general, exploratory rummaging in a person's belongings.' " *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992) (internal quotation marks omitted) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)). Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

These constitutional provisions impose two requirements for search warrants. *State v. Higgs*, 177 Wn. App. 414, 426, 311 P.3d 1266 (2013). First, a warrant can be issued only if supported by probable cause. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). Second, a search warrant must be sufficiently particular so that the officer executing the warrant

can reasonably ascertain and identify the property authorized to be seized. *State v. Besola*, 184 Wn.2d 605, 610, 359 P.3d 799 (2015). The particularity requirement both "limit[s] the executing officer's discretion" and "inform[s] the person subject to the search what items the officer may seize." *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993). A warrant is overbroad if the particularity requirement is not satisfied. *Higgs*, 177 Wn. App. at 426.

"Warrants for materials protected by the First Amendment require a heightened degree of particularity." *Besola*, 184 Wn.2d at 611. For these materials, the particularity requirement must be strictly applied. *Id.* "The advent of devices such as cell phones that store vast amounts of personal information makes the particularity requirement of the Fourth Amendment that much more important." *State v. McKee*, 3 Wn. App 2d 11, 24, 413 P.3d 1049, *review granted*, 191 Wn.2d 1012 (2018).

We review de novo whether the warrant authorizing the search and seizure of a phone meets the particularity requirement of the Fourth Amendment. *Id.* at 23. We evaluate search warrants from a practical, commonsense point of view instead of a hypertechnical one. *Besola*, 184 Wn.2d at 615.

3.    Analysis

Here, the search warrant authorized police to perform an analysis of Morasch's cell phone "includ[ing] all stored or removable memory cards stored within the device for photographs, videos, and metadata." CP at 203-04.

In *Besola*, the Supreme Court reviewed a search warrant issued to investigate the defendant for possession of child pornography. 184 Wn.2d at 608-09. The warrant authorized the search and seizure of "[a]ny and all video tapes, CDs, DVDs, or any other visual and or audio

recordings . . . [a]ny photographs, but particularly of minors . . . [and] [a]ny and all computer hard drives or laptop computers and any memory storage devices." *Id.* The court held that "[T]hese descriptions were overbroad because they allowed officers to seize lawfully possessed materials, such as adult pornography, when the descriptions could easily have been made more particular" by using the precise statutory language to describe the materials sought. *Id.* at 610, 613.

Likewise in *McKee*, the warrant for search and seizure of the defendant's phone cited the crimes under investigation but did not use the language in the statutes to describe the specific data sought from the defendant's phone. 3 Wn. App. 2d at 26. The warrant identified as "Items Wanted" the following: "Images, video, documents, text messages, contacts, audio recordings, call logs, calendars, notes, tasks, data/[I]nternet usage, any and all identifying data, and any other electronic data from the cell phone showing evidence of the above listed crimes." *Id.* at 18-19 (alteration in original). The court held that this description was overbroad and allowed the police to search and seize lawful data when the warrant could have been made more particular to the crimes under investigation, sexual exploitation of a minor and dealing in depictions of a minor engaged in sexually explicit conduct. *Id.* at 26.

Like the warrants in *Besola* and *McKee*, Morasch's warrant also contained a reference to the alleged crime and applicable statute, but made no attempt to narrow the actual description of the items wanted with precise language from the voyeurism statute to tailor the warrant to items particular to that crime. The warrant authorized the blanket analysis of Morasch's cell phone, including all photographs, videos, or metadata and "all stored or removable memory cards" stored on the phone. CP at 203-04. But the warrant provided no guidance as to what data was

sought. Therefore, the officer searching the phone could not reasonably ascertain and identify the property authorized to be seized. *See Besola*, 184 Wn.2d at 610. Especially given the heightened standard for warrants implicating the First Amendment, the warrant here was not particular enough to satisfy the Fourth Amendment.

We hold that the search warrant was overbroad in violation of the Fourth Amendment particularity requirement.[1]

B.      SAG CLAIMS

Morasch's SAG asserts that the trial court erred in (1) denying his CrR 7.4 motion to arrest judgment for insufficient evidence on count 1, (2) denying his motion to suppress his statements to Landas, (3) finding that probable cause existed for Landas to seize his cell phone, and (4) denying his CrR 8.3 motions to dismiss. We disagree.

1.      Sufficient Evidence that Count 1 Occurred in Washington

Morasch asserts that the trial court erred in denying his CrR 7.4 motion to arrest judgment, claiming that there was insufficient evidence that the incident giving rise to count 1 (the video filmed at a Goodwill store) occurred in Washington. We disagree.

CrR 7.4(a)(3) allows a defendant to move to arrest judgment for "insufficiency of the proof of a material element of the crime." In ruling on a motion for arrest of judgment, the trial court may not weigh the evidence; instead, it may only test or examine the sufficiency of the evidence. *State v. Randecker*, 79 Wn.2d 512, 517, 487 P.2d 1295 (1971). "The evidence presented in a criminal trial is legally sufficient to support a guilty verdict if any rational trier of

---

[1] Because we reverse Morasch's convictions on counts 1 and 3 because the search warrant was overbroad in violation of the Fourth Amendment, we need not address his ineffective assistance of counsel claim.

fact, viewing the evidence in a light most favorable to the state, could find the essential elements of the charged crime beyond a reasonable doubt." *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). When reviewing a trial court's decision on a motion for arrest of judgment, we engage in the same sufficiency inquiry as the trial court. *Id.* at 420.

Here, the trial court instructed the jury that, to convict Morasch of voyeurism as charged in count 1, they would have to find beyond a reasonable doubt that "any of these acts occurred in the State of Washington." CP at 690. At trial, the State called Thomas, the digital forensics investigator who had examined Morasch's phone. Thomas testified that he had extracted the metadata on the video from Morasch's phone, complete with geographic coordinates. He then input those coordinates into Google Maps to pinpoint a Goodwill store in Battle Ground as the location where the video was filmed. Thomas testified that this method of location had a margin of error of less than 100 feet.

Morasch argues that the coordinates Thomas entered into Google Maps were incorrect. There was a small discrepancy in the coordinates Thomas entered. But there is no indication that this discrepancy meant that Morasch actually was in Oregon rather than Washington when he took the video. The evidence was sufficient for a rational trier of fact, viewing the evidence in the light most favorable to the State, to find beyond a reasonable doubt that the video was taken in Washington.

Accordingly, we hold that the trial court did not err in denying Morasch's CrR 7.4 motion to arrest judgment on count 1.

2. Morasch's Statements to Landas

Morasch asserts that the trial court erred in denying his motion to suppress his statements to Landas. He claims that he was coerced into speaking to Landas because Evergreen's dean of students, at the direction of its principal, came to Morasch's classroom while he was teaching and directed him to speak to Landas about the school's administrative investigation. We disagree.

"We review challenged findings of fact entered after a CrR 3.5 hearing for substantial evidence and review de novo whether the trial court's conclusions of law are supported by its findings of fact." *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013). Unchallenged findings of fact are verities on appeal. *State v. Elkins*, 188 Wn. App. 386, 396, 353 P.3d 648 (2015).

The Fifth Amendment prohibits the government from using self-incriminating statements made by a public employee under threat of termination in a subsequent criminal prosecution. *Garrity v. New Jersey*, 385 U.S. 493, 499-500, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967).

Although Morasch does not explicitly address any specific factual findings, the arguments he advances in his SAG appear to challenge the trial court's findings that Landas was conducting the interview "as a police officer, and as part of a criminal investigation based on the allegations that had been raised," (CP at 300), that Morasch "agreed to voluntarily speak to Officer Landas" (CP at 301), and that "[t]here was no link in the conversation between Officer Landas and [Morasch] to any discharge or disciplinary action." (CP at 302).

These factual findings are supported by the testimony given at the CrR 3.5 hearing. Although Landas did confer with Evergreen's principal and dean of students before interviewing

Morasch, Landas testified that his investigation was criminal in nature, initiated by the 911 call made by KG's mother and his subsequent in-person interviews with KG and her mother. Evergreen's dean of students testified that he accompanied Landas to Morasch's classroom, not to signal an administrative investigation into the incident, but to supervise Morasch's students while Morasch spoke with Landas. At no point did Landas tell Morasch that the interview had anything to do with potential disciplinary action related to his employment. Accordingly, we hold that substantial evidence supported the trial court's findings of fact.

The trial court concluded that Morasch had failed to establish that any direct or implied threat to his employment existed during his interview with Landas, or that the criminal and administrative investigations into the incident were somehow co-mingled. This conclusion is supported by the trial court's findings of fact.

Therefore, we hold that the trial court did not err in denying Morasch's motion to suppress his statements to Landas.

3. Probable Cause to Seize Morasch's Cell Phone

Morasch asserts that the trial court erred in denying his motion to suppress evidence obtained pursuant to the search of his cell phone, arguing that Landas did not have sufficient information to constitute probable cause to seize Morasch's phone during their interview on July 15, 2015. Because we hold above that the evidence found on the cell phone should be suppressed, we need not address this claim.

4. CrR 8.3 Motions to Dismiss

Under the heading "It was error to deny the CrR 8.3 motions to dismiss," Morasch asserts that his waiver of his speedy trial right was not intelligent because he was unaware that discovery

No. 50810-9-II

materials were being "withheld willfully" by the prosecutor. SAG at 14-15. However, Morasch provides no further description of the alleged withheld discovery and no further argument. Although RAP 10.10(c) does not require that an appellant refer to the record or cite authority in a SAG, the rule does require an appellant to inform this court "of the nature and occurrence of alleged errors." This assertion is too vague to properly inform this court of the error. Therefore, we do not review this claim.

CONCLUSION

We reverse Morasch's convictions on counts 1 and 3, affirm Morasch's conviction on count 2, and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

WORSWICK, J.

GLASGOW, J.

13