[No. 29025. Department One. August 5, 1943.]

THE STATE OF WASHINGTON, *Respondent,* v. JERRY KING, *Appellant.*[1]

[1]Reported in 140 P. (2d) 283.

*Chalmer G. Walters,* for appellant.

*Lloyd L. Wiehl* and *Ian R. MacIver,* for respondent.

STEINERT, J.—This is an appeal from a judgment sentencing the defendant to life imprisonment upon conviction of the crime of grand larceny and subsequent adjudication of his status as being that of an habitual criminal.

The facts are these: On November 19, 1926, in cause number 2962 of the superior court for Yakima county, appellant, Jerry King, was charged by information with the crime of grand larceny. On the following day he entered a plea of guilty upon the accusation, and immediately thereafter the court entered a judgment finding and decreeing him to be guilty of the offense charged, but imposing no sentence upon him therefor.

On December 16, 1926, an information was filed in the same county, in cause number 2975, charging appellant with being an habitual criminal. About a week later, appellant pleaded guilty to that charge, and on the same day the court entered judgment in cause number 2975 determining his status to be that of an

habitual criminal and sentencing him to life imprison-
ment in the state penitentiary.

On April 20, 1942, appellant, while serving his sen-
tence in the penitentiary, petitioned this court for a
writ of *habeas corpus* to obtain his release from cus-
tody, on the ground that his sentence in cause number
2975 was illegal and void. After a hearing on that
matter, this court entered an order directing the su-
perior court for Yakima county to determine whether
or not appellant had ever been sentenced for the crime
of grand larceny, in cause number 2962, and, if the
court should find from its records that appellant had
not been so sentenced and if there were no legal ob-
stacle or defect in the record preventing further action
by the court, then to sentence appellant for that crime
in that cause taken in connection with the finding in
cause number 2975 as to appellant's status of being an
habitual criminal.

Pursuant to that order, appellant was brought be-
fore the superior court for Yakima county on Febru-
ary 4, 1943, at which time, in cause number 2962, the
court found that, although appellant had therein been
convicted of the crime of grand larceny, he had never
been sentenced therefor, but had been sentenced to
life imprisonment, in cause number 2975, on the charge
of being an habitual criminal, which sentence was void.
The court thereupon entered judgment in the original
cause, number 2962, reciting the findings as just stated,
and imposing upon appellant a sentence of life impris-
onment by reason of his conviction of the substantive
offense of grand larceny followed by the adjudication
of his status as being that of an habitual criminal.

The question now presented for our decision is this:
Where a judgment of conviction for the crime of grand
larceny has been entered against a defendant, but the
judgment imposes no sentence for that crime, and the
defendant is thereafter charged with being an habitual
criminal under the provisions of Rem. Rev. Stat., § 2286

[P. C. § 8721], and judgment upon the latter charge is entered sentencing the defendant to life imprisonment, and that sentence is thereafter found to be illegal and void, may the trial court then impose upon the defendant a sentence of life imprisonment upon the original conviction for grand larceny, taking into consideration the fact that pursuant to, and consequent upon, that conviction the defendant has been adjudged to be an habitual criminal?

While this precise question has never been decided by this court, there are many of our decisions which not only bear closely upon it but also very clearly indicate the circumstances under which a defendant may be sentenced or resentenced, as distinguished from the conditions under which no second, or even first, sentence may be imposed upon him. See *State ex rel. Edelstein v. Huneke*, 138 Wash. 495, 244 Pac. 721; *Blake v. Mahoney*, 9 Wn. (2d) 110, 113 P. (2d) 1028; *In re Lombardi*, 13 Wn. (2d) 1, 123 P. (2d) 764; *In re Cress*, 13 Wn. (2d) 7, 123 P. (2d) 767, affirmed in *State v. Cress*, 15 Wn. (2d) 661, 131 P. (2d) 955; *State v. Dooly*, 14 Wn. (2d) 459, 128 P. (2d) 486; *In re Towne*, 14 Wn. (2d) 633, 129 P. (2d) 230.

■ Those decisions recognize and suggest as the proper procedure in this general type of case the following method: Where a defendant has been convicted of a crime, consequent upon which an habitual criminal proceeding is instituted against him, sentence upon the substantive offense upon which he has been convicted shall await the outcome of the habitual criminal proceeding, and if the latter be substantiated, then, and not until then, shall sentence be imposed upon the defendant for the commission of the substantive crime, with an increased penalty exacted because of the adjudication of defendant's habitual criminal status.

■ The cases then hold (1) that if, contrary to the prescribed procedure, sentence is imposed for the substantive offense while the habitual criminal proceed-

ing is still pending and undetermined, the judgment imposing such sentence is premature and beyond the power of the court to enter; and, further, (2) that if the sentence is imposed solely upon the habitual criminal charge, such sentence also is void, and the defendant shall then be sentenced, as for the first time, upon the latest, substantive offense, taken in connection with the habitual criminal adjudication; but (3) that if formal sentence be once imposed upon the defendant for the substantive offense *prior* to the institution of the habitual criminal proceeding, such sentence is final and even though the defendant is subsequently adjudged to be an habitual criminal he cannot thereafter be again sentenced for the original substantive crime taken in connection with the subsequent adjudication of his habitual criminal status.

The first branch of the rule as thus pronounced is exemplified in the *Edelstein* case, *supra;* the second branch is illustrated by the *Cress* case, *supra;* and the third branch was invoked to produce the result in the *Lombardi* case, *supra.* The *Blake* and *Towne* cases, *supra,* came within both the first and second branches of the rule. The *Dooly* case, *supra,* differs somewhat from the others and will be discussed separately a little later.

The case at bar presents an element of fact which was not directly present in any of the preceding cases. As has already been shown, judgment of *conviction* was entered against appellant in cause number 2962, based upon the substantive offense of grand larceny, but that judgment imposed no *sentence,* nor, in fact, was any sentence for the substantive crime ever entered prior to the one from which this appeal was taken. In the preceding cases, sentence was entered *upon the substantive crime* either before or shortly after the adjudication of the defendant's criminal status, or else was entered solely upon the adjudication of that status.

The case of *State v. Dooly, supra,* while in some respects illustrative of the first branch of the rule above stated, more nearly resembles and is analogous to the case here. In that case, Dooly was charged with the crime of "petit larceny by check." Upon his plea of guilty, the court entered judgment finding him guilty of the offense charged, but imposing no sentence at that time. Information was then filed in a new cause charging Dooly with being an habitual criminal. On his plea of guilty to that charge, the court adjudged him to be an habitual criminal, but imposed no sentence in that cause. Later, on motion of the prosecuting attorney, the trial court entered judgment upon the check charge, in the original cause, adjudging Dooly guilty of the crime of petit larceny and sentencing him to twenty years' imprisonment in the penitentiary; when, in truth, the penalty prescribed by statute for that crime, a misdemeanor, is only a year's imprisonment in the county jail, a fine of not more than one thousand dollars, or both.

Sometime thereafter, Dooly was brought from the penitentiary into the superior court, and a judgment was then entered, in the original cause, reciting both the original conviction for petit larceny and the subsequent adjudication of his status as being that of an habitual criminal, and thereupon sentencing him to the penitentiary for a period of not more than twenty years.

On the appeal, this court pointed out that in the first judgment and sentence no reference was made to the fact that Dooly had been adjudged to be an habitual criminal, and that so far as the record disclosed he had originally been sentenced to twenty years' imprisonment in the penitentiary on a mere petit larceny conviction. Under that situation, this court held the first judgment and sentence to be void, but also held that the trial court was authorized at any time thereafter to order the prisoner brought before it for the imposi-

tion of a proper judgment and sentence, as was finally done in that case.

The *Dooly* case differs from this case in only one respect. In that case, a sentence was pronounced in the original cause, but that sentence was subsequently found and declared to be void, and proper sentence was thereafter imposed in the same cause. In this case, no sentence whatever was pronounced until the final judgment and sentence in the original cause. The legal effect of the one situation was therefore the same as that in the other. The only *valid* sentence in either case was the one finally imposed in the original cause.

The judgment of *conviction,* without sentence, in cause number 2962, was simply a judicial establishment of appellant's guilt as ascertained by the verdict of the jury. However, the judgment contained no formal declaration of the legal consequences of his guilt as thus established, but at most constituted simply an order or decree from which it might be inferred that sentence would be imposed later.

■ In its technical legal signification "sentence" is ordinarily synonymous with "judgment" and denotes the action of a court of criminal jurisdiction formally declaring to the accused the legal consequences of the guilt which he has confessed or of which he has been convicted. 24 C. J. S. 15, Criminal Law, § 1556. The essential part of the judgment is the punishment and the amount thereof, and until sentence is pronounced there is no final judgment.

In *State v. Siglea,* 196 Wash. 283, 82 P. (2d) 583, we said:

"The term 'judgment' has been defined as the determination or sentence of the law, pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court, affirming that, upon matters submitted for its decision, a legal duty or liability does or does not exist. 1 Black on Judgments (2d ed.), 2, § 1. Rem. Rev. Stat., § 404 [P. C. § 8078], defines 'judgment' as the final determination of the rights of the parties to the action. . . .

*"In a criminal case, it is the sentence that constitutes the judgment against the accused, and, hence, there can be no judgment against him until sentence is pronounced* [Citing cases]." (Italics ours.)

In this case, there was never any valid sentence pronounced against the appellant until the rendition of judgment and imposition of sentence on February 4, 1943, in cause number 2962. That judgment, comprising a declaration of guilt, a finding of an adjudication of appellant's habitual criminal status, and an imposition of a life sentence, is not only in all respects a final, correct, and valid judgment, but also is the only judgment of that character in this case.

We find no error in the action of the trial court, and its judgment is accordingly affirmed.

SIMPSON, C. J., MILLARD, JEFFERS, and MALLERY, JJ., concur.

[1] Reported in 140 P. (2d) 287.