[No. 965-2.    Division Two.    June 11, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. LEWIS EVERETT ASHKER, *Appellant*.

*J. Dean Morgan, Public Defender*, for appellant.

*James E. Carty, Prosecuting Attorney*, and *Edward Kelly, Deputy*, for respondent.

PETRIE, J.—The defendant, Lewis Everett Ashker, appeals from a judgment and sentence entered pursuant to a jury verdict of guilty to two counts of second-degree assault (counts 3 and 4 of the information) and one count of making a telephone call in contravention of RCW 9.61.230 (count 5 of the information).[1] The defendant also appeals

---

[1] Counts 1 and 2 of the information were severed and subsequently dismissed.

the trial court's determination that he is an habitual criminal and the sentence imposed thereunder.

The jury could have found the facts, upon which the charges against Ashker are based, to be as follows.

On the evening of December 31, 1971, a man who identified himself as Lewis Ashker made a series of telephone calls to the Vancouver Police Department. The caller was upset with a Sgt. Hansen. He "ordered" Officer Melloy, who took the calls, to "Get Hansen out here or I'll go looking for him in my car and I'll shoot any policeman or anything else that gets in my road." The first call was received by Officer Melloy about 7:15 p.m.

Between 7:30 and 8 p.m., Richard Barnett, an acquaintance of Ashker arrived at the apartment house where Ashker lived. He testified that as he approached the building Ashker fired a pistol into the ground near Barnett from the porch balcony, and ordered him to come up to the balcony. Ashker then held the pistol to Barnett's neck. Subsequently, Ashker and Barnett went into Ashker's apartment and talked until Barnett left.

Police soon began to arrive on the scene. One of the first to arrive was State Patrolman John Goldsmith. He testified that a man came out of Ashker's apartment with a rifle in his hands and that the man "lowered the weapon, pointed it at me, and fired it from his hip." Goldsmith then felt or heard the concussion from the bullet and dove for cover. Ashker stated that he fired a rifle from his porch, but denied that he shot at anyone.

On the day Ashker was found guilty of the above described offenses, he was further charged with being an habitual criminal. The court found him to be an habitual criminal and then imposed two separate sentences. The first pertained to Ashker's conviction of the two assault charges and the illegal telephone communication, and provided, in part, a 10-year prison sentence for each assault conviction, the terms to run consecutively. The second judgment and

sentence pertained to the habitual criminal proceeding. It stated: "that the Defendant has been found to be an habitual criminal as charged in the Supplemental Information herein, and that he be punished by confinement at hard labor in the penitentiary of the State of Washington the maximum term of (20) twenty years."

The defendant makes 16 assignments of error on this appeal. Assignments of error 1 through 9 assail evidentiary rulings of the trial court or other matters which are within the discretion of the trial court. We have carefully considered each of these assignments and find no abuse of discretion. The remaining seven assignments are not directed to the assault convictions. Accordingly, we affirm the defendant's conviction on both counts of second-degree assault.

Defendant's assignments of error numbered 10, 11 and 12 assail his conviction on count 5, which purported to charge a crime under RCW 9.61.230. We need consider only No. 10, which asserts that count 5 of the information did not state a crime and therefore must be dismissed. We agree.

The portion of the amended information with which we are here concerned charged:

> That he, the said Lewis Everett Ashker did, in the County of Clark, State of Washington, on or about the 31st day of December, 1971, unlawfully make a telephone call to Police Officer William Melloy *with intent to threaten* said William Melloy, by stating over the telephone that he, the said Lewis Everett Ashker would kill all police officers, . . .

(Italics ours.) The crime attributed to Ashker is defined by RCW 9.61.230, which in pertinent part, provides:

> Every person who, *with intent to harass, intimidate, torment or embarrass* any other person, shall make a telephone call to such other person:
>
> . . .
>
> (3) threatening to inflict injury on the person or property of the person called or any member of his family; or . . . shall be guilty of a misdemeanor.

(Italics ours.)

■ A pleading charging a crime is not entitled to a favorable presumption regarding its sufficiency. It must charge all of the statutory elements of the particular crime alleged to have been committed. *State v. Moser*, 41 Wn.2d 29, 246 P.2d 1101 (1952).

■ A person commits the crime defined in RCW 9.61.230(3) when he: (1) makes a telephone call to another person; (2) threatens injury; (3) to such other person, or his property, or to any member of his family; (4) *"with intent to harass, intimidate, torment or embarrass"* such other person. (Italics ours.) Even if the statement that the caller "would kill all police officers" is liberally construed as a call "threatening to inflict injury on the person" of Officer Melloy, there still is no allegation in the information that such statement was made with the requisite specific intent, namely, *with intent to harass, intimidate, torment or embarrass*.

The information charging the defendant with the crime of making an unlawful telephone call, as written, would permit a conviction without proof of a specified element of the statutory crime.[2] As such, the information is constitutionally defective and subject to dismissal. *In re Richard*, 75 Wn.2d 208, 211, 449 P.2d 809 (1969). Accordingly, count 5 of the amended information must be dismissed.

We next turn to Ashker's assignments of error regarding the trial court's determination that he is an habitual criminal.

Upon trial to the court, the defendant was found to be an habitual criminal as defined in the *first* paragraph of RCW 9.92.090.[3] The statute requires proof of one prior felony, or

---

[2] We note that the trial court instructed the jury in terms of the specific intent required by the statute, but this instruction did not purport to amend, and does not cure the defect in, the information.

[3] The first paragraph of RCW 9.92.090, sometimes referred to as the "little bitch," provides:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been convicted, whether in this state or elsewhere, of any crime which under the laws of this state would

two misdemeanors of which fraud or intent to defraud is an element. The State introduced evidence to show Ashker had prior convictions (a) of robbery in Utah and (b) of conspiracy to commit larceny in Colorado (which the trial court found was a gross misdemeanor of which fraud is an element under Washington law). Since there were not two such misdemeanors, only the evidence relating to the prior felony (robbery) was determinative of whether Ashker fell within the statutorily defined status.

The defendant's position is that the evidence presented by the State does not prove a felony "conviction" within the meaning of the statute. We agree.

█ The trial court relied principally upon a certified copy of a clerk's minute entry of a Utah court proceeding. The minute entry states that on January 23, 1960, Lewis Everett Ashker was represented by an attorney, was arraigned with a codefendant, and that he pled guilty to the crime of robbery as charged. The document then recites that

> judgment and sentence is pronounced as follows, to-wit: "The judgment and sentence of this Court is that you, Lewis Everette Ashker, be confined in the Utah State Prison for the indeterminate term as provided by law for the crime of Robbery as charged in the Information."

However, the last sentence of the minute entry concludes:

> Thereupon, the Court grants . . . Defendant a stay of execution of sentence to February 6, 1960, at 2:00 P.M. and the matter is referred to the Adult Probation and Parole Department *for investigation.*

(Italics ours.)

We have not been advised of the sentencing procedure under Utah law; the law of that State was not in evidence. On its face, the document declares that on January 23,

---

amount to a felony, or who shall previously have been twice convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for not less than ten years."

1960, the court referred the matter to a probation and parole agency for investigation, with an indication that further action was contemplated at some time subsequent to the date of the minute entry. It does not appear from the minute entry whether or not the sentence apparently imposed was ever finalized.

There was, however, other evidence that Ashker had been convicted of robbery in Utah in 1960. In the jury trial Ashker admitted on direct examination that he had pled guilty to robbery in Utah on the date indicated in the minute entry. Defendant repeated the admission on cross-examination. We will assume that those admissions were properly before the court under the supplemental proceedings. Neither these admissions nor the minute entry of the court constitute evidence of the *final* disposition of the judgment and sentence given Ashker in that case.

We have previously held that

a "conviction" within the meaning of the habitual criminal statute imports the element of finality to the prior judgment and sentence—it cannot be based upon a suspended or deferred sentence.

*State v. Mitchell*, 2 Wn. App. 943, 952, 472 P.2d 629 (1970).

The State has not established, even prima facie, the finality of the Utah judgment and sentence. The trial court's determination is not supported by sufficient evidence and the sentence imposed on the theory that Mr. Ashker was an habitual criminal must be reversed.

■ One final matter requires mention. Both parties now agree that the trial court acted without authority when it sentenced the defendant to the two consecutive 10-year terms for the second-degree assault convictions because at that point in time the habitual criminal proceeding was still pending. *See State ex rel. Edelstein v. Huneke*, 138 Wash. 495, 244 P. 721 (1926); *In re Towne*, 14 Wn.2d 633, 639, 129 P.2d 230 (1942). Having found Ashker was an habitual criminal the trial court could only impose sentence as provided by RCW 9.92.090. *State v. King*, 18 Wn.2d 747, 750, 751, 140 P.2d 283 (1943).

This cause is remanded to the trial court with direction to dismiss count 5 of the information, and to set aside the judgment and sentence based upon the court's determination that the defendant was an habitual criminal. Finally, because the trial court was without power to impose the sentence provided under the second-degree assault statutes at the time that sentence was pronounced, Ashker must be sentenced for these substantive offenses, as if for the first time. *State v. King, supra.*

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied July 9, 1974.

Review denied by Supreme Court October 10, 1974.