[No. 3222-1. Division One. September 15, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD LEE
SIMS, *Appellant*.

*Rousso, Rosen, Ackerman & Donion* and *Jack J. Ackerman*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Thomas H. Wolfendale, Deputy,* for respondent.

ANDERSEN, J.—

### FACTS OF CASE

The burglary charge with which this case is concerned arose out of an alleged burglary on March 30, 1972.

The State's evidence showed as follows.

The Seattle residence alleged to have been burglarized was owned by a Mr. Eckert and rented to a Mr. Stewart. Stewart did not testify at the trial.

A neighbor lady testified that on the afternoon in question she saw two men drive up to the Stewart residence. One of the men appeared to go to the front door which she could not see and the other went to the rear door which she could see.

She further testified that the man at the back door, appeared not to get a response to his knocking, went back to his car and then returned to the back door carrying some kind of a tool. She identified him as the defendant.

The lady shifted her vantage point somewhat and could no longer see into the back door but could see the sidewalk to it. She testified that after 5 to 10 minutes of pounding from the back door area, she shifted her position again in time to see the defendant leave the house from the back door.

She then testified that she saw both men carry items out of the house to the waiting car. These items included a suitcase, tape recorder and television set. She identified the defendant as the one who carried out the television set and put it in the car.

Mr. Eckert, the landlord, then arrived, having been tele-

phoned by the neighbor. As he testified, on his arrival one of the two men, who by this time was in the car, began honking the horn. The man he identified as the defendant, Mr. Sims, then came around the corner of the house carrying a television set. The defendant informed Mr. Eckert that he was a friend of Stewart and that Stewart had given him a key to stop by the house and pick up a few things.

On investigation of the premises, Mr. Eckert found both the front and back doors broken in and the door jambs pulled 6 or 7 inches out of place. There was plaster, screws and parts of locks and door scattered around inside the house. Also within the house, drawers were open, bedding was strewn about and the like. As he related it to the jury, "it looked like the place had been gone through real thoroughly."

The defendant did not testify.

On September 27, 1972, the jury returned a verdict by which they found the defendant guilty of burglary in the second degree.

Post-trial motions were filed by defense counsel. Following these, the defendant was released upon posting bail on October 14, 1972. Then on December 1, 1972, prior to sentence being imposed on the burglary charge, the King County Prosecuting Attorney charged the defendant Sims with being a habitual criminal.

The habitual criminal charge was followed by a series of delays which lasted 1½ years. These included the defendant failing to appear for the scheduled trial, several substitutions of defense counsel, defense discovery motions and extensive hearings in connection with discovery of the prosecutor's records, various continuances, at least some of which were agreed, the unsuccessful application for a writ brought by the prosecuting attorney in the Supreme Court and a habeas corpus proceeding prosecuted to the Supreme Court by the defendant appearing pro se.

Defendant's present counsel ultimately prevailed upon the prosecuting attorney to voluntarily dismiss the habitual

criminal charge against the defendant, which was done on July 31, 1974. The reason stated by the deputy prosecutor was that his office had reconsidered the case based on new evidence presented by defense counsel.

Following dismissal of the habitual criminal charge, the court on that same date did impose sentence on the September 27, 1972, jury verdict of guilty of burglary in the second degree. This was also on July 31, 1974, when a suspended sentence was entered, conditioned among other things on the defendant serving a substantial term in the King County jail. The judgment and sentence provided that the defendant was to be given credit for time served and that he was to be released on probation no later than August 7, 1974. No complaint is made that this was not done.

This case is here on the defendant's appeal from the July 31, 1974, imposition of judgment and sentence.

## ISSUES

Two issues are dispositive of this appeal.

ISSUE ONE. Was the evidence produced at the trial legally sufficient to sustain the jury's verdict of guilty of burglary in the second degree?

ISSUE TWO. Was the defendant entitled to a dismissal of the burglary charge against him because of the delay in sentencing?

## DECISION

ISSUE ONE.

CONCLUSION. The evidence produced by the State viewed in the light most favorable to the State, as it must be, meets the test of sufficiency for cases based on circumstantial evidence.

■ The defendant has not excepted to the instruction given to the jury on the elements of the offense charged.[1] It

---

[1] "Every person who, with intent to commit some crime therein, shall break and enter any building, or part thereof, not being lawfully owned or occupied by said person, wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree.

"Every person who shall unlawfully break and enter any such building shall be deemed to have broken and entered the same with

required the jury to find a "breaking." Since the time of the trial, it has been determined that a person may be guilty of burglary in the second degree by entering the dwelling of another with the intent to commit a crime even without a "breaking." *State v. Gregor*, 11 Wn. App. 95, 97, 521 P.2d 960 (1974). An instruction to which no exception has been taken becomes the law of the case. *Ketchum v. Wood*, 73 Wn.2d 335, 339, 438 P.2d 596 (1968). That instruction thus becomes the law of this case.

■■ The legal test, by which the defendant's challenge to the sufficiency of the State's evidence is to be measured, recently was stated in the second-degree burglary case of *State v. Braxton*, 10 Wn. App. 1, 4-5, 516 P.2d 771 (1973):

> The question of sufficiency of circumstantial evidence in criminal cases was considered most recently in some detail in *State v. Randecker, supra* [79 Wn.2d 512, 487 P.2d 1295 (1971)]. Synthesizing the rules as reiterated in that case, we find:
>
> (1) The function of the trial or appellate court in reviewing a sufficiency question is to determine whether there is "substantial evidence" to support either the state's case or the particular element involved.
>
> (2) In considering the evidence, we must assume the truth of the state's evidence and view it most strongly against the defendant, allowing the state the benefit of all reasonable inferences.
>
> (3) Where the case is based entirely upon circumstantial evidence, the trial or appellate court's function is not to determine whether the circumstances are consistent only with the hypothesis that the accused is guilty. Such determination is for the jury. The court's only function is to determine whether there is "substantial evidence" tending to establish circumstances on which a finding of guilt may be predicated.

---

intent to commit a crime, therein, unless such unlawful breaking and entering shall be explained by testimony satisfactory to the jury to have been made without criminal intent.

"The word 'building' shall include every house, shed, boat, water craft, railway car, tent or booth, whether completed or not, suitable for affording shelter for any human being, or at a place where any property is or shall be kept for use, sale or deposit." Instruction No. 3.

*Accord, State v. Randecker,* 79 Wn.2d 512, 517, 487 P.2d 1295 (1971).

The jury could well have determined that the battered condition of the front and rear doors, door jambs and locks, together with the attendant circumstances testified to by witnesses, amply established an unlawful breaking and entering.

The jury had the further right to regard the removal of household contents to the waiting car in the context in which they occurred, according to the testimony, as proof of the defendant's intent to commit a crime within the dwelling. Even if the jury did not so consider it, they need not have concluded that the defendant's explanation to the landlord, *i.e.,* "[Stewart] gave me a key to stop and pick up a few things," was sufficient to overcome the statutory presumption of intent to commit a crime, as stated in the court's instruction *(see* footnote 1, *supra). See* RCW 9.19.030.

Applying the above-stated rules regarding sufficiency of the evidence to the facts of the present case, particularly in the absence of any controverting defense testimony, we hold that the State did present a sufficient case on which the jury's finding of guilt could be predicated.

As the defendant points out, there was some inconsistency in the identification testimony. The jury, however, elected to give weight and credence to the testimony of the neighbor lady and the landlord. In so doing, the jury was performing a function assigned to it under our judicial system, and one with which this court may not interfere under the present record. *State v. Woody,* 73 Wn.2d 179, 181, 437 P.2d 167 (1968).

Issue Two.

Conclusion. There was no showing of such an arbitrary, oppressive, vexatious, or prejudicial delay in sentencing as would constitute a denial of the defendant's constitutional rights or as would compel a vacation of the judgment and sentence or dismissal of the burglary charge.

Following the verdict indicating that the defendant

was guilty of burglary in the second degree, but prior to the defendant being sentenced thereon, the prosecuting attorney's office filed a habitual criminal charge. This was proper. Our Supreme Court, after reviewing the case law on this subject, explained the correct procedures in such cases as follows:

> Those decisions recognize and suggest as the proper procedure in this general type of case the following method: Where a defendant has been convicted of a crime, consequent upon which an habitual criminal proceeding is instituted against him, sentence upon the substantive offense upon which he has been convicted shall await the outcome of the habitual criminal proceeding, and if the latter be substantiated, then, and not until then, shall sentence be imposed upon the defendant for the commission of the substantive crime, with an increased penalty exacted because of the adjudication of defendant's habitual criminal status.

*State v. King*, 18 Wn.2d 747, 750, 140 P.2d 283 (1943).

 Furthermore, it is clear that the trial court did not lose jurisdiction over the defendant for the purposes of sentencing him on the burglary charge by virtue of the delay caused by the pendency of the habitual criminal charge. A case in point is *State v. Westphal*, 62 Wn.2d 301, 304, 382 P.2d 269 (1963) in which the court said and held as follows:

> Finally, defendant argues that the court lost jurisdiction over him because of the delay in sentencing him after entry of the jury verdict. We do not agree.
> The jury returned its verdict May 10, 1962. The next day a supplemental information was filed accusing defendant of being an habitual criminal. May 22, 1962, defendant pleaded not guilty to the supplemental information. The case was set for trial. September 21, 1962, the supplemental information was dismissed for reasons not appearing in the record before us. September 26, 1962, defendant was sentenced on the original charge of burglary.
> The procedure was not irregular; the trial court did not lose jurisdiction.

Defense counsel aptly refers to the chronology of this

case as a "maze." Even if we were to overlook the delays in the habitual criminal case which were caused by or agreed to by the defendant or his various counsel, the remedy this court could impose in such a situation would be to dismiss the habitual criminal charge. CrR 3.3 (f); *State v. Williams*, 85 Wn.2d 29, 530 P.2d 225 (1975). The prosecutor already having dismissed the habitual criminal charge, any delay caused by the pendency of that charge is now moot.

This then leaves for consideration what the effect is of the delay between the September 27, 1972, jury verdict and the filing of the habitual criminal charge on December 1, 1972.

During the interim between the jury's verdict cn the burglary charge and the filing of the habitual criminal charge, the defendant filed various motions and, in addition, was released on bond on October 14, 1972. The shortly over 2 month delay in sentencing under the circumstances here presented does not constitute such a showing of arbitrary, oppressive, vexatious or prejudicial delay as would constitute a denial of the defendant's constitutional rights or compel a dismissal of the burglary charge. *State v. Brewer*, 73 Wn.2d 58, 62, 436 P.2d 473 (1968). Even if we were to determine that the criminal rules enacted effective July 1, 1973, requiring that sentence be imposed without unreasonable delay, also constituted the common law on this subject, we could not say that under the circumstances of this case the delay was unreasonable. CrR 7.1 (a) (1).

*State ex rel. Burgunder v. Superior Court*, 180 Wash. 311, 39 P.2d 983 (1935) cited by the defendant is not in point. The holding in *Burgunder* was based on Const. art. 4, § 20, which requires that "[e]very cause submitted to a judge of a superior court for his decision shall be decided by him within ninety days from the submission thereof; . . ." *Burgunder* simply holds that once a defendant has been presented for sentencing the matter is deemed submitted to the judge and he is required to impose sentence within 90 days. In the present case, the defendant was not presented for sentencing until the habitual criminal charge

was dismissed. When the defendant was submitted for sentencing, he and his attorney were heard from at length and judgment was entered and sentence imposed on that same day.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied December 3, 1975.

Review denied by Supreme Court February 24, 1976.