[No. 11894-3-I.   Division One.   May 23, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. ROGER LEASK BRAITHWAITE, *Appellant.*

*John G. Ziegler* (appointed counsel for appeal) and *Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

ANDERSEN, C.J.—

FACTS OF CASE

The defendant, Roger Leask Braithwaite, appeals the judgment and sentence entered on a jury verdict finding him guilty of two counts of robbery (RCW 9.75.010) while armed with a deadly weapon (RCW 9.95.040) which was a firearm (RCW 9.41.025).

The defendant and accomplices robbed the Royal Fork Restaurant in Seattle and, 4 days later, robbed the Latitude 47 Restaurant, also in Seattle.

The defendant was apprehended, charged and his case tried to a jury. A verdict finding him guilty of both counts of robbery was returned on March 23, 1976, along with a special verdict finding that he was armed with a deadly weapon, namely a firearm, during each robbery.

The defendant had previously been convicted of two robberies in Pierce County on December 28, 1970. After his arrest for the Seattle robberies, his parole on the Pierce County charges was suspended. Then after the guilty verdicts were returned against him on the Seattle robbery charges, his parole was revoked. Based on that revocation, he was sent to the Washington State Penitentiary in early 1977 and the Board of Prison Terms and Paroles set a substantial minimum term (apparently 15 years) on the Tacoma robbery convictions.

Before the defendant was sent to the state penitentiary on the parole revocation, he was charged by the King County Prosecuting Attorney with being a habitual criminal. RCW 9.92.090. It is the established law of this state that when a habitual criminal proceeding is filed following a guilty verdict on a criminal charge, the defendant cannot be sentenced on the criminal charge until the habitual criminal proceeding has been concluded. This is because if the defendant is determined to be a habitual criminal, that status is used to enhance the penalty for the underlying crime at the time sentence is pronounced and the judgment entered. *State v. King,* 18 Wn.2d 747, 750, 140 P.2d 283 (1943); *State v. Keith,* 86 Wn.2d 358, 361, 544 P.2d 747 (1976).

In connection with the habitual criminal proceeding, the defendant stipulated in writing that he had been convicted of the two Tacoma robberies referred to above, that he had also been convicted of one count of burglary in the second degree and one count of forgery in the first degree in Pierce County on November 28, 1961 and that he had been convicted of one count of burglary in the second degree in Cowlitz County on January 9, 1964. All of these offenses were felonies.

At the habitual criminal bench trial on August 30, 1976, the trial court concluded that the Cowlitz County conviction could not be considered a conviction because as to it there was no adequate waiver of counsel and the guilty plea was otherwise defective. This has not been contested by the State. At that trial, the trial court also concluded as a matter of law that the two November 28, 1961 Pierce County convictions for burglary and forgery could not be considered prior convictions within the meaning of the habitual criminal statute because the defendant had been given a suspended sentence thereon. This latter conclusion was strenuously contested by the State and when, as a consequence of that ruling, the trial court dismissed the habitual criminal proceeding, the State sought discretionary review in this court.

We granted discretionary review. We heard the case and on November 28, 1977 filed our opinion wherein we decided that the trial court erred when it concluded that the November 28, 1961 Pierce County burglary and forgery convictions could not be considered because sentence thereon had been suspended. We also decided therein that the habitual criminal statute does not inflict double punishment for the same offense, nor place a defendant twice in jeopardy. We thereupon reversed the trial court's dismissal of the habitual criminal proceeding and remanded the case to the trial court for reinstatement of it. *State v. Braithwaite,* 18 Wn. App. 767, 572 P.2d 725 (1977).

The defendant, in turn, then sought and obtained review of our decision by the State Supreme Court. Following a hearing in that court, the Supreme Court on October 4, 1979 filed its opinion. The Supreme Court also held that a conviction followed by a suspended sentence does constitute a "previous conviction" for purposes of the habitual criminal statute, and that the defendant would not be placed in double jeopardy by reinstatement of the habitual criminal proceeding. The decision of this court was affirmed and the Supreme Court remanded the case back to the trial court for further proceedings. *State v. Braithwaite,* 92

Wn.2d 624, 600 P.2d 1260 (1979).

The habitual criminal proceeding against the defendant ultimately came to an end when the King County Prosecuting Attorney requested that it be dismissed; and the same was done with a number of other similar pending proceedings against other defendants following the State Supreme Court's landmark decision in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980). *See State v. Sauve,* 33 Wn. App. 181, 182, 652 P.2d 967 (1982); *State v. McKenzie,* 31 Wn. App. 450, 453, 642 P.2d 760 (1981). *Holsworth* "effected an abrupt change in the law with respect to procedures in habitual criminal proceedings. The burden upon the prosecutor was significantly increased as a result of that opinion." *State v. Williams,* 98 Wn.2d 428, 432, 656 P.2d 477 (1982).

Judgment and sentence on the two Seattle robbery convictions was subsequently entered on August 3, 1981 and this appeal followed therefrom.

Two issues are determinative of this appeal.

## Issues

ISSUE ONE. Did the delay in sentencing the defendant on his Seattle robbery convictions warrant dismissal of those charges against him?

ISSUE TWO. Did the trial court's failure to sua sponte instruct the jury at the Seattle robbery trial that the State had to prove the special firearm and deadly weapon allegations beyond a reasonable doubt require that the portions of the judgment and sentence relating thereto be stricken?

## Decision

CONCLUSION. We answer the questions posed by the foregoing issues in the negative and affirm the defendant's Seattle robbery convictions from which he appeals.

The defendant seeks dismissal of his Seattle robbery convictions herein on the basis of the approximately 5 year and 4 month delay between the guilty verdicts on the Seattle robbery charges and entry of the judgment and sentence thereon.

Neither the Supreme Court of the United States nor the Supreme Court of this state have held that speedy sentencing is encompassed by either U.S. Const. amend. 6 or Washington State Const. art. 1, § 22. *See State v. Edwards,* 93 Wn.2d 162, 167 n.2, 606 P.2d 1224 (1980). Division Two of this court has, however, held that there is no constitutional speedy sentencing right, *State v. Lammert,* 14 Wn. App. 137, 142, 540 P.2d 466 (1975). *Accord, Erbe v. State,* 25 Md. App. 375, 336 A.2d 129, 132–36 (1975), *aff'd,* 276 Md. 541, 350 A.2d 640 (1976); *State v. Johnson,* 363 So. 2d 458, 460 (La. 1978); *State v. Drake,* 259 N.W.2d 862, 864–66 (Iowa 1977). In ruling as it did, the *Lammert* court cited the test of *Pollard v. United States,* 352 U.S. 354, 361, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957) that "[t]he delay must not be purposeful or oppressive."

█ Many courts, ourselves included, seem to have dealt with this issue by assuming *arguendo* that the speedy trial rule is applicable to sentencing, then have discussed it in speedy trial terms and have gone on to find no violation. *See State v. Sterling,* 23 Wn. App. 171, 596 P.2d 1082 (1979).

In *Sterling,* a delay of sentencing case, we also quoted *Pollard*'s "purposeful or oppressive" delay of trial test and went on to hold as follows:

> Thus, once the guilt of a defendant has been determined, it is appropriate to apply a standard of reasonableness to the timeliness of sentencing rather than the standards that have evolved under the speedy trial rule. The convicted defendant may be anxious, but it is no longer an anxiety resulting from public accusation, but apprehension of punishment. *See Brooks v. United States,* [423 F.2d 1149] 1152–53 [(8th Cir.), *cert. denied,* 400 U.S. 872, 27 L. Ed. 2d 111, 91 S. Ct. 109 (1970)]; *United States v. James,* 459 F.2d 443, 444 (5th Cir.), *cert. denied,* 409 U.S. 872, 34 L. Ed. 2d 123, 93 S. Ct. 202 (1972).
>
> The defendant asserts that his rights were violated. We hold that the delay in the sentencing of the defendant was not a violation of his right to a speedy trial, but we will examine his claim as if it were. *Barker v. Wingo,* [407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972)]

adopted a balancing test to evaluate whether the right of a defendant has been violated wherein the conduct of both the prosecution and the defendant are weighed. As therein stated: "[L]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" are but "some factors which courts should assess." *Barker v. Wingo, supra* at 530.

(Footnote omitted.) *Sterling,* at 175–76.

Applying the foregoing balancing test to the case before us, we then turn to the *first factor,* "length of delay". Attached hereto as an appendix, for convenience of reference, is a "time line" showing the dates of pertinent events beginning with the defendant's two Seattle robberies and going through his release on early parole.[1]

The period of approximately 5 years and 4 months between verdict and sentence is undoubtedly lengthy, but whether that delay was unreasonable, purposeful or oppressive in turn depends on the circumstances surrounding it. As to this first factor, *Brooks v. United States,* 423 F.2d 1149 (8th Cir.), *cert. denied,* 400 U.S. 872, 27 L. Ed. 2d 111, 91 S. Ct. 109 (1970), *cited with approval in Sterling,* is instructive:

the essential ingredient of the Sixth Amendment right to a speedy trial is "orderly expedition and not mere speed."

*Brooks v. United States,* 423 F.2d at 1152. Furthermore,

in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It

---

[1]This time line is from an appendix to the respondent's brief. That brief was duly served on defense counsel prior to oral argument being heard, and defense counsel has not claimed any inaccuracies therein, nor have we found any. Since it appears to be at least reasonably accurate and complete, it is included herein for illustrative purposes.

secures rights to a defendant. It does not preclude the rights of public justice."

*United States v. Ewell,* 383 U.S. 116, 120, 15 L. Ed. 2d 627, 86 S. Ct. 773 (1966) (quoting *Beavers v. Haubert,* 198 U.S. 77, 87, 49 L. Ed. 950, 25 S. Ct. 573 (1905)).

A careful review of the appellate record (see also Time Line, Appendix) indicates, if not speed by all concerned, at least orderly expedition by all concerned.

The *second factor* in the balancing test is "the reason for the delay". As the record reflects (again see Time Line, Appendix), approximately 1 year and 8 months was taken up by the State in preparing and filing the habitual criminal charge, bringing that charge to trial and in then obtaining discretionary review and reversal by this court of the trial court's order dismissing the habitual criminal charge. The State had the right to file the habitual criminal charge and bring it to trial. It also had the right to seek review of the dismissal, and it is that which caused most of this approximately 1 year, 8 month period of delay.

The right to speedy trial does not prevent the correction of legal errors . . .

*Nance v. United States,* 422 F.2d 590, 592 (7th Cir. 1970). *See also State v. Kelly,* 20 Wn. App. 705, 709, 582 P.2d 891 (1978). Nor is delay resulting from appellate correction of legal errors considered as a "purposeful act" for purposes of the speedy trial test. *See Nance v. United States, supra; Bozza v. United States,* 330 U.S. 160, 166–67, 91 L. Ed. 818, 67 S. Ct. 645 (1947).

The bulk of the next approximately 3 years of delay was directly attributable to the defendant's unsuccessful efforts to get the State Supreme Court to change this court's decision which had reversed the trial court's dismissal of the habitual criminal charge. Then the remaining part of the total delay appears to have been either caused by the defendant or agreed to by him, or partly one and partly the other.

Since the procedural aspects of this case are somewhat intricate, we have necessarily generalized to some extent in

referring to the pertinent time periods, but it is nonetheless clear that most of the delay in the defendant being sentenced was not caused by the State. Nor is it irrelevant to the defendant's claims of oppression and unreasonableness to note that the State prevailed on both appeals.

The *third factor* for consideration is "the defendant's assertion of his right". After this court's decision reversing the dismissal of the habitual criminal charge (some 1 year and 8 months following the verdict), the defendant could have been sentenced had he so desired. Obviously he did not. Nor does anything in the record suggest that at any stage did the defendant try to expedite his habitual criminal trial (or retrial, after that was ordered).

The *fourth factor,* and perhaps the most important one, is that of "prejudice to the defendant". We perceive no such prejudice in this case. Had the defendant's habitual criminal trial been held and the case terminated at any time before the much later filing of the State Supreme Court's decision in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), with its important changes in the law relating to habitual criminal proceedings, based on the record herein, it is likely that the defendant would have been found to be a habitual criminal and sentenced accordingly. As it was, however, in due course following *Holsworth* the King County Prosecuting Attorney had the habitual criminal proceeding against the defendant dismissed. Rather than prejudice the defendant, in this sense the delay in sentencing ultimately benefited him.

We also note that despite the lengthy minimum term which the Board of Prison Terms and Paroles set when it revoked the defendant's parole on the Tacoma robberies, the following occurred (see Brief of Appellant): the defendant went to the state penitentiary on the revocation in early 1977; he started receiving furloughs to his family home in Walla Walla in the spring and summer of 1979; he was placed in a Tacoma work release facility in September of 1979; he was released on personal recognizance from February 21, 1980 to August 3, 1981 and although confined for

a few months after ultimately being sentenced to life imprisonment on the Seattle robbery convictions on August 3, 1981, he was thereafter released from confinement on early parole on about November 30, 1981; and so far as the record before us reflects, the defendant has been free from confinement since that time.

In view of the vigorous argument defense counsel has made to this court, we have very carefully reviewed the defendant's claims as to how he says he could have been released even earlier had he been sentenced for the Seattle robberies earlier. With reference thereto, however, we conclude that the defendant's claims are speculative. As we held in *State v. Sterling,* 23 Wn. App. 171, 177, 596 P.2d 1082 (1979), "speculation or possibility is insufficient to show prejudice". *See also State v. Kelly, supra* at 710.

There are also *two additional factors* in this case which we consider to be pertinent in this balancing test. One is that the defendant by this appeal from his Seattle robbery convictions does not contend he was unfairly tried or improperly convicted of having committed those robberies. The other is that the defendant does not claim that the revocation of his parole on his earlier Tacoma robbery convictions was unwarranted in view of the jury verdict finding him guilty of the Seattle robberies.

We have balanced the conduct of the defendant and of the State applying the *Barker v. Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972) factors, along with other factors which we deem pertinent under the facts of this case, and conclude therefrom that there was no constitutional or other infringement of the defendant's rights on account of the delay in his being sentenced for the Seattle robberies. Despite a considerable time lapse between verdict and sentence on the Seattle robberies, under the facts of this hard fought case the sentencing delays were not unreasonable, and there was no "purposeful or oppressive" delay on the part of the State.

Since the habitual criminal proceedings against the defendant were ultimately dismissed, there is no longer any

issue of double jeopardy or of ex post facto punishment, as the defendant argues in his brief. *State v. Sims,* 14 Wn. App. 277, 284, 539 P.2d 863 (1975). In any event, both this court and the State Supreme Court in our previous reviews of this case decided these double jeopardy issues against the defendant. Further, the ex post facto arguments now made in Brief of Appellant could have been made in the previous appeals, were not, and will not now be considered. *State v. Sauve,* 33 Wn. App. 181, 183–85, 652 P.2d 967 (1982).

The defendant also argues that the absence of a burden of proof instruction in connection with the special deadly weapon and firearm interrogatories submitted to the jury constituted prejudicial error. It is his position that this conclusion is compelled by the State Supreme Court's recent decision in *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983). We disagree.

It is true here, as in *Pam,* that no such burden of proof instruction was requested or given. It is also true here, as in *Pam,* that robbery was the crime involved. In *Pam,* however, "[t]he weapon fell apart as [the defendant] was running away", *Pam,* at 751, and the "[p]olice recovered the wooden forestock of 'what appeared to be a shotgun', as one officer testified", *Pam,* at 754. That court then reasoned that "[w]ith the appropriate instructions, a rational jury could have a reasonable doubt as to the operability of the weapon", *Pam,* at 755, and concluded therefrom that the error was not harmless beyond a reasonable doubt.

"A reasonable doubt is a doubt for which a reason based upon the evidence exists." *Pam,* at 754. *See State v. Tanzymore,* 54 Wn.2d 290, 291, 340 P.2d 178 (1959). Here no rational jury could have a reasonable doubt as to the two robbers being in fact armed with operable guns.[2] The

---

[2]The jury was also instructed:

"The term 'firearm' includes any gun. The term 'deadly weapon' includes any pistol, revolver, rifle or other 'firearm'." Instruction 8 (part).

record includes dozens of pages of testimony concerning the guns used, their description and the fear.they instilled in the robbery victims. Defense counsel included in his opening statement remarks to the effect that this case involved a robbery at gunpoint by two men armed with guns. The defense was that the defendant was not one of the robbers and did not own a gun. The instructional error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

Affirmed.

## APPENDIX

### TIME LINE

Trial

| | |
|---|---|
| 11/7/75 | Defendant robbed Royal Fork Restaurant |
| 11/11/75 | Defendant robbed Latitude 47 Restaurant |
| 11/15/75 | Defendant arrested |
| 12/1/75 | Information filed in King County charging defendant with two counts armed robbery committed with a deadly weapon, firearm |
| 3/19–23/76 | Jury trial before Judge Smith; defendant convicted as charged |
| 4/19/76 | Sentencing delayed; State filed habitual criminal supplemental information |
| 8/27/76 | Supplemental information amended |
| 8/30/76 | Habitual criminal bench trial—Judge Elston |
| 9/20/76 | Trial court entered findings of fact, conclusions of law—excluded prior conviction based on *Helvering v. Mitchell,* 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630 (1938) and *State v. Ashker,* 11 Wn. App. 423, 523 P.2d 949 (1974); defendant not a habitual criminal; supplemental information dismissed |

Appeal 1

| | |
|---|---|
| 9/21/76 | State filed Motion for Discretionary Review to Supreme Court |
| 11/5/76 | Supreme Court transferred Motion for Discretionary Review to Court of Appeals |
| late 1976 | Braithwaite's parole revoked on prior Pierce County conviction |

| | |
|---|---|
| 1/7/77 | Court of Appeals granted Motion for Discretionary Review, cause 5161–44471–I |
| Pre–2/17/77 | State filed Brief of Appellant |
| 3/21/77 | Braithwaite filed Brief of Respondent |
| 5/9/77 | State filed Reply Brief |
| 9/28/77 | Oral Argument—Court of Appeals |
| 11/28/77 | Court of Appeals decision filed; trial court reversed; habitual criminal proceedings reinstated |
| 12/19/77 | Braithwaite filed Motion for Reconsideration |
| 2/16/78 | Court of Appeals ordered answer to motion |
| 3/22/78 | State filed Answer to Motion for Reconsideration |
| 3/29/78 | Braithwaite filed Motion for Leave To File Reply |
| 4/19/78 | Court of Appeals denied Motion for Reconsideration |
| 5/10/78 | Braithwaite filed Petition for Review |
| 6/27/78 | State filed Answer to Petition for Review, joining in Braithwaite's request to grant review |
| 10/20/78 | Supreme Court denied Petition for Review, cause 45583 |
| 10/23/78 | Supreme Court amended 10/20/78 order and "deferred action" |
| 4/23/79 | Petition for Review Granted |
| 5/21/79 | Oral argument in Supreme Court |
| 10/4/79 | Supreme Court opinion filed, affirming Court of Appeals, remanding for entry of judgment and sentence |
| 10/24/79 | Braithwaite filed Motion to Reconsider |
| 10/30/79 | Order calling for answer to motion |
| about 11/13/79 | State filed Answer to Motion for Reconsideration |
| 12/14/79 | Motion for Reconsideration denied |
| 1/10/80 | Braithwaite moved to stay mandate |
| 1/29/80 | First mandate issued |

Remand 1

| | |
|---|---|
| 2/20/80 | Amended Conclusions of Law filed |
| 2/21/80 | Sentencing continued at Braithwaite's request for preparation of presentence reports; Braithwaite released on his own personal recognizance, concurrent with conditions of parole |
| By 3/3/80 | Braithwaite paroled on prior Pierce County convictions |
| 4/1/80 | Braithwaite sentenced |
| 4/7/80 | Braithwaite filed Notice of Appeal |
| 5/7/80 | Supreme Court recalled first mandate |
| 11/14/80 | Supreme Court amended its previous opinion in the case, ordering case remanded for proceedings "consistent with this opinion" |
| 11/20/80 | Second mandate issued |

Remand 2

| | |
|---|---|
| 1/28/81 | Parties stipulated to (1) vacation of 1980 habitual criminal determination and sentence, and (2) setting of habitual criminal trial for 4/6/81 |
| 3/16/81 | Defendant filed petition for writ of habeas corpus, naming sentencing Judge Smith as a defendant |
| 3/24/81 | State dismissed the habitual criminal supplemental information based on new *State v. Holsworth* proof problems |
| 5/21/81 | Scheduled sentencing date continued; court did not think it proper to proceed while a named defendant in Braithwaite's federal case; Braithwaite did not want a different judge to impose sentence |
| 6/11/81 | Sentencing continued by agreement of parties to 7/14/81; federal court had not resolved Braithwaite's case |
| | Parties entered into stipulation that Judge Smith should be dismissed as a defendant in Braithwaite's federal action; judge was dismissed out |
| 8/3/81 | Braithwaite sentenced on two armed robberies, deadly weapon, firearm (*not* as a habitual criminal) to concurrent life terms of imprisonment; Braithwaite remanded to custody |
| 8/27/81 | Braithwaite filed Notice of Appeal in the present case |
| 10/6/81 | Parole board set concurrent minimum terms of 90 months |
| 11/30/81 | Parole board released Braithwaite on early parole |

WILLIAMS and CORBETT, JJ., concur.

Reconsideration denied May 24, 1983.