[No. 12481–1–I.   Division One.   May 7, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID
BRIAN HARDY, *Appellant.*

*Kim Wakefield* of *Washington Appellate Defender
Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael
Schwartz, Deputy,* for respondent.

WILLIAMS, J.—After a trial to the court, sitting with a jury, David Brian Hardy was convicted of two counts of first degree robbery and one count of attempted first degree robbery. Hardy's motion for a new trial and arrest of judgment was denied, judgment was entered, and he appealed. We affirm.

At trial, James Doyle, Rusty Regan and Rick Vanderwall testified that they were walking through Seattle's Pike Place Market when they heard a man say "toke, smoke or dope?" Doyle asked the man if he was selling marijuana. The man said that he had a friend who would sell them some and took the trio up the street where they met Hardy. He introduced them to a third man. All agreed that they would meet again in 30 minutes and conduct the marijuana transaction.

In 30 minutes, they did meet and Doyle, Regan and Vanderwall were told to take Hardy and his compatriots to a nearby home. They drove there in Regan's car. At the house, Hardy drew a pistol, his friend drew a knife and Regan and Vanderwall were robbed of their money (Doyle had no money).

The first question is whether Hardy was deprived of the right to testify in his own behalf.[1] Prior to trial, Hardy and his counsel, in discussing trial strategy, agreed that he should not testify. At trial, in the absence of the jury and during consideration of a motion on the admissibility of testimony of a prosecution witness, the following occurred:

THE COURT: I will permit the officer to testify as to the circumstances of his contact with Mr. Hardy, to the extent that I have indicated. I think that's evidence of a common plan or scheme.

THE DEFENDANT: I don't want to sit here. I'm ready to

---

[1]Const. art. 1, § 22 (amend. 10) provides, in part:

"In criminal prosecutions the accused shall have the right to . . . testify in his own behalf . . ."

RCW 10.52.040 provides, in part: "Any person accused of any crime in this state, by indictment, information, or otherwise, may, in the examination or trial of the cause, offer himself, or herself, as a witness in his or her own behalf, and shall be allowed to testify as other witnesses in such case . . ."

go back. I'm not sitting here. This is just ridiculous.

MR. HURVITZ: Dave, easy, easy.

THE DEFENDANT: This does not make no sense. What this officer is saying, it's a lie. It's a lie. I don't care what you think of me. I'm ready to go back. I don't need to deal with this. I don't need to deal with that officer, man, I really don't.

MR. HURVITZ: Judge, for the record I would like to note my objection for the proffered testimony of Officer O'Leary concerning any of the circumstances of his prior contact with the defendant.

THE DEFENDANT: That's not the right story. He is definitely not telling you what happened.

MR. HURVITZ: Although my understanding of Evidence Rule 404(b), as well as State v. Goebel, is that he could testify that he did in fact know him from before, from a previous contact, without describing what the contact actually was.

Excuse me for just a moment.

THE COURT: All right.

(Mr. Hurvitz then conferred with the defendant, off the record.)

THE COURT: Mr. Hurvitz, we will have to proceed.

MR. HURVITZ: I understand, Judge. We are ready.

THE COURT: Mr. Hardy, you, of course, have an absolute right to be present throughout every bit of these proceedings. But obviously we can't countenance any outbursts of any kind.

THE DEFENDANT: I'm sure.

THE COURT: And if you wish to absent yourself voluntarily, you also have that right. But I do not want to have to take any action because of outbursts that interfere with the proceedings.

THE DEFENDANT: Uh–huh.

THE COURT: Very well.

Bring in the jury.

During the off the record conference, Hardy apparently expressed a desire to refute the officer's testimony. The defense rested, however, without Hardy testifying.

Several days after the verdict of guilty was rendered and the jury discharged, Hardy's trial counsel submitted an affidavit in support of a motion for a new trial in which he stated that:

2) Prior to trial and after the beginning of trial in this case, I conducted conferences with the defendant in Unit I of the King County Jail. One of the topics included in these conferences was whether or not the defendant would testify on his own behalf at trial. It was my understanding, based on our discussions of trial strategy, that the defendant was in agreement with me that he should not testify on his own behalf. As such, I did not call him to testify on his own behalf at trial.

3) After I indicated to the court that the defense did not intend to present any evidence, the defendant stated, "I want to say something." When I realized that the defendant meant that he wished to testify, I reminded him of the conferences which we had before the beginning of trial and during trial, at which time it was my impression that he did not wish to testify. I was under the impression that these reminders changed the defendant's inclination to testify.

4) On August 16, 1982, I received a telephone call from the defendant. He once again indicated acute distress at not being permitted to testify on his own behalf. He stated that I must have misunderstood him during our conferences, because he never agreed that he would not testify on his own behalf. He indicated further that because he was not permitted to testify, he felt that he was denied a fair trial and effective representation by counsel.

The applicable rule of law has been stated as follows:

In general, the decision to call or not call a witness is a matter of legitimate trial tactics. *State v. Hess,* 86 Wn.2d 51, 541 P.2d 1222 (1975); *State v. Floyd,* 11 Wn. App. 1, 521 P.2d 1187 (1974). However, there is a qualification to the rule. Apparently a criminal defendant has an absolute right to testify in his own behalf which right cannot be abrogated by defense counsel. *People v. Freeman,* 76 Cal. App. 3d 302, 142 Cal. Rptr. 806, 810–11 (1977); *ABA Standards Relating to the Prosecution Function and the Defense Function* § 5.2(a), Commentary at 238 (Approved ·Draft, 1971). *See generally Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643 (1971). . . . This is in contrast to an allegation . . . that defense counsel merely advised defendant against testi-

fying as a matter of trial tactics. If defendant accepts this tactical advice and is not acquitted of the charges, he cannot later allege that he was denied effective counsel because he accepted the advice of his attorney and did not testify. *E.g. United States ex rel. Johnson v. Johnson*, 531 F.2d 169, 176–77 (3d Cir. 1976); *United States v. Ladley*, 517 F.2d 1190 (9th Cir. 1975); *United States ex rel. Tyrrell v. Jeffes*, 420 F. Supp. 256, 272 (E.D. Pa. 1976).

*State v. King*, 24 Wn. App. 495, 499, 601 P.2d 982 (1979). In the present context, the defendant is denied his right to testify only if "his attorney actually prevented him from testifying in his own behalf". *King*, at 499.

At the post–trial hearing on Hardy's new trial motion, the following took place:

MR. McKEE: My understanding, then, I guess, that the decision on the part of the defense not to call Mr. Hardy was trial tactics?

MR. HURVITZ: On my part?

MR. McKEE: Yes.

MR. HURVITZ: Completely trial tactics.

MR. McKEE: That was after he indicated that he wanted to testify, do you remember the exact exchange?

MR. HURVITZ: I do not remember the exact exchange. I do remember we had a conference, I explained to him at that point the disastrous effect that would have been, that I was developing a certain theory of the case through cross–examination of the State's witnesses, and he fell silent after I explained that to him . . .

Thus, it appears that trial counsel properly developed the trial strategy agreed upon during the preparation of the case while in no sense actually preventing Hardy from taking the witness stand. Hardy was not denied his right to testify.

█ The next question is whether the State sufficiently proved that Hardy was armed with a firearm, which was a deadly weapon, at the time of the offense. The three victims all testified that Hardy was armed with a real firearm. Moreover, James Doyle testified that Hardy told him "get on the ground or I'll blow your . . . head off." No rational

trier of fact could have a reasonable doubt as to whether Hardy was in fact armed with an operable gun. *State v. Braithwaite,* 34 Wn. App. 715, 725, 667 P.2d 82 (1983). The special verdicts are upheld.

The next question is whether the trial court denied Hardy due process by refusing to provide him a trial transcript prior to the hearing on his new trial motion. An indigent defendant does not have a constitutional right to have the State furnish him with a transcript of a legal proceeding in every instance. *State v. Cirkovich,* 35 Wn. App. 134, 665 P.2d 440 (1983). The rule is:

> that the in forma pauperis preparation of a trial transcript for use in a motion for a new trial . . . is discretionary with the court. . . . [T]he grant or denial should be viewed in light of the following factors:
>
> (a)   Whether the original trial counsel is pursuing the post–trial motion;
>
> (b)   Whether the trial judge is also passing on the new trial motion;
>
> (c)   The length of the trial;
>
> (d)   The grounds for the motion;
>
> (e)   The usefulness of the transcript in terms of substantiating the defendant's allegations;
>
> (f)   The likelihood of a dispute between counsel which could be resolved by transcribing all or part of the proceedings.

(Footnote omitted.) *United States v. Banks,* 369 F. Supp. 951, 955 (M.D. Pa. 1974). After a trial of ordinary length, Hardy, with the assistance of both his trial counsel and a new attorney appointed to represent him, brought the new trial motion before the trial judge. There was no showing that the transcript would have been useful or necessary. The court did not abuse its discretion in denying the request.

The final question is whether the trial court erred by allowing a police officer to testify regarding a prior contact with Hardy. Seattle police officer O'Leary testified that about 2 weeks prior to Hardy's arrest he encountered Hardy and another man near the Pike Place Market.

O'Leary was in plain clothes at the time. The two men offered to sell O'Leary drugs. When he agreed, they told him that the drugs were not in their possession but were in a different location and he would have to accompany them into an alley. O'Leary then identified himself as a police officer and the men dispersed.

Hardy contends that O'Leary's testimony was barred by ER 404(b). We disagree. The similarity between Hardy's encounter with O'Leary and the testimony given by the three victims was substantial. The testimony was admissible because it related to issues of common plan, design, and intent. We note the court further ruled that O'Leary's subjective belief (that he was being "set up" for a robbery) was inadmissible as being irrelevant and unduly prejudicial. The trial court properly exercised its discretion. *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982).

Hardy's remaining claims of error are either encompassed in our foregoing rulings, request us to retry factual issues which we cannot do, *State v. Snider,* 70 Wn.2d 326, 327, 422 P.2d 816 (1967), or are otherwise patently without merit. *State v. Mercer,* 34 Wn. App. 654, 662, 663 P.2d 857, *review denied,* 100 Wn.2d 1005 (1983).

The judgment is affirmed.

SWANSON and ANDERSEN, JJ., concur.

Review denied by Supreme Court July 13, 1984.